IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:25-CV-00006

ALLIANT PURCHASING, LLC                                    PLAINTIFF

vs.

OMNIA PARTNERS, LLC and                                    DEFENDANTS
PREMIER, INC.

## AMENDED VERIFIED COMPLAINT

Alliant Purchasing, LLC ("Alliant"), for its Amended Verified Complaint against Omnia Partners, LLC ("Omnia") and Premier, Inc. ("Premier"), states as follows:

## PARTIES

1.      Alliant is a limited liability company organized under the laws of the Commonwealth of Kentucky. Alliant's only member is Alliant Holding, LLC, the members of which reside in Kentucky, Indiana, and Ohio.  Alliant is therefore a citizen of only Kentucky, Indiana, and Ohio.

2.      Omnia is a limited liability company organized under the laws of the State of Delaware. On information and belief, Omnia's members all reside in Tennessee and, therefore, Omnia is a citizen of Tennessee. Omnia may be served with process through its Registered Agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919, via the Kentucky Secretary of State pursuant to KRS 454.210.

3.      Premier is a corporation organized under the laws of the State of Delaware and with a principal place of business in the State of North Carolina and is thus a citizen of the States of Delaware and North Carolina. Premier may be served with process through its Registered Agent,

CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615, via the Kentucky Secretary of State pursuant to KRS 454.210.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because the claims at issue arise from Defendants' transaction of business in the Commonwealth of Kentucky, contracting to supply services in this Commonwealth, and causing tortious injury by an act or omission in this Commonwealth. Personal jurisdiction is also proper because Defendants have engaged in substantial and continuous activity within or directed at the Commonwealth of Kentucky, Defendants have availed themselves of the privilege of conducting business in the Commonwealth, the claims at issue against Defendants arise from Defendants' activities conducted in the Commonwealth of Kentucky, and Defendants have a substantial enough connection with the Commonwealth of Kentucky to make the exercise of jurisdiction over it reasonable.

6. Venue is proper in this Court under 28 U.S.C § 1391(b)(2) and (3) because the parties entered into relevant contracts in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and because this Court has personal jurisdiction over the Defendants.

## FACTUAL BACKGROUND

### The Premier Program

7. Premier is the second-largest Group Purchasing Organization ("GPO") in the United States by purchase volume, aggregating roughly $84 billion in annual spending.

8. As a GPO, Premier leverages the buying power of its approximately 500,000 members to acquire goods and services from vendors at discounted rates. Premier, in turn, offers these goods and services through its subsidiaries, including Premier Healthcare Alliance, LP ("Premier LP"), under its group purchasing program (the "Premier Program").

9. The Premier Program's offerings include goods and services for use in both the healthcare and non-healthcare sectors.

10. Until 2023, Premier operated the Premier Program, and the healthcare and non-healthcare purchases thereunder, through its subsidiary, Premier LP.

11. Alliant is also a GPO, with approximately 29,000 members.

12. In 2015, Alliant and Premier entered into a GPO Participation Agreement with Premier LP (the "Premier LP Agreement") and became a member of the Premier Program.

13. As a member of the Premier Program, Premier acts as Alliant's "agent," and owes Alliant duties in that capacity.

14. Alliant's membership status and tier allows it to extend membership in the Premier Program to other eligible organizations—an arrangement referred to as "sponsorship" in Premier Program parlance.

15. Specifically, the Premier LP Agreement provides Alliant with the right to sponsor both healthcare and non-healthcare entities in the Premier Program. Together, the entities Alliant sponsors are referred to as "Member Facilities."

16. As a Sponsor, Alliant is responsible for managing the purchasing activities of its Member Facilities. In return, Premier pays Alliant a portion of the administrative fees collected from the Member Facilities' purchases.

3

17. A Sponsor is distinct from the actual GPO entity, which acts in a broad capacity and in an administrator role operating the purchasing program itself.

18. On the other hand, a Sponsor is a member of the GPO and provides mentorship, guidance, and support to lower tiered Member Facilities to foster their success and manage their purchasing needs in the larger GPO program.

19. Since joining, Alliant has sponsored approximately 31,000 Member Facilities, including both healthcare and non-healthcare organizations, in the Premier Program.

<u>**The Recruitment and Retention Policy**</u>

20. In or around 2016, Premier and/or Premier LP implemented the Recruitment and Retention Policy (the "R&R Policy") to govern the activities of its members, and in particular, members with sponsorship rights. A copy of the R&R Policy is attached hereto as **Exhibit 1**.

21. The R&R Policy defines the term "Sponsor" as a "group affiliate, direct affiliate, or any other third party that is permitted by Premier to extend membership in the [Premier] Program to healthcare and/or non-healthcare facilities that operate within Premiers' healthcare and/or non-healthcare classes of trade." (Ex. 1, R&R Policy, "Purpose").

22. The R&R Policy defines the term "Member" as any entity listed on Premier's membership roster, including a Sponsor. (*Id.*).

23. Alliant extends membership in the Premier Program to healthcare and non-healthcare facilities.

24. Alliant is thus a "Sponsor" and a "Member" under the R&R Policy. (*See id.* at "Purpose").

25. The R&R Policy provides that transfers of Members between Sponsors are not permitted "except as described in this policy…." (*Id.* § 2.1.1).

4

26. In order to determine whether a facility is already being sponsored by another Sponsor in the Premier Program, the R&R Policy directs Sponsors to refer to Premier's "roster," which lists all Premier Program Members and their current Sponsor. (*Id.* § 1.1)

27. However, even when the Member does have another Sponsor, the R&R Policy sets forth a number of ways that a sponsorship can be transferred between Sponsors. (*Id.* §§ 2.2–2.3).

28. For example, a Member may change its Sponsor by obtaining written consent from its current and requested Sponsor, or by establishing that the sponsorship transfer is necessary for valid business reasons that are approved by Premier. (*Id.* §§ 2.2.1, 2.2.4 and 2.2.8).

29. In addition, a Member may select a new Sponsor if its current or former Sponsor undergoes a "change of control." (*Id.* §§ 2.2.6 and 2.3.1).

30. A "change of control" occurs when "…all or substantially all of the assets of, the sponsor are sold, transferred, or assigned to an unrelated third party…" (*Id.* § 2.2.6).

31. In the event of a "change of control", the R&R Policy provides that the "sponsored affiliates", i.e., the various Member Facilities, of the Sponsor undergoing the change of control "*shall have the right* to transfer to another sponsor by executing a transfer request form within six (6) months following the change in control, without any other action by any other party, and such transfer shall not be a violation of this Policy." (*Id.*) (emphasis added).

32. Pursuant to the R&R Policy, unless the member withdraws its transfer request, the transfer is effective 30 days after it is submitted. (*Id.* § 2.9).

33. The foregoing sponsorship transfer options, including the "change of control" option, are not restricted to any type of Sponsor or Member, and apply equally to healthcare and non-healthcare facilities. (*See id.* "Purpose", §§ 2.2 and 2.3.1).

**Omnia Acquires Premier's Non-Healthcare Contracts**

34. Omnia holds itself out as the largest GPO for non-healthcare entities in the United States.[1]

35. Purportedly, over 94% of the United States population is served by agencies that use Omnia's GPO services.[2]

36. Omnia has over 600,000 members, aggregating roughly $30 billion in annual spending.

37. In or around May of 2023, Premier created and incorporated a limited liability company, Non-Healthcare Holdings, LLC ("NHH").

38. Upon information and belief, in or around May of 2023, Premier underwent a re-structuring which, among other things, transferred all the Premier Program non-healthcare Member/Sponsor contracts and accounts to NHH.

39. According to Premier's SEC filings, in or after July of 2023, Omnia then acquired NHH from Premier for approximately $680 million.

40. Upon information and belief, in connection with this acquisition, Omnia and Premier entered into a 10 year "Channel Partnership Agreement" that purports to provide that NHH's Member/Sponsor contracts and accounts will continue to have access to, and purchase through, the Premier Program.

---

[1]https://info.NHHpartners.com/group-purchasing-faqs
[2]https://www.NHHpartners.com/about-us/in-the-news/NHH-partners-finalizes-purchase-of-premier-inc

41.     Omnia, however, as the owner of NHH, is now considered the "primary GPO" for the acquired contracts and accounts, and retains the associated net cash flows that the administrative fees generate from these purchases in the Premier Program.

42.     As the GPO entity, Omnia acts as an "agent" for its Members and owes duties to its Members in that capacity.

43.     Following the acquisition of NHH, Omnia provided Alliant, as well as other non-healthcare Members and Sponsors, with information about the transaction and confirmed that the acquired contracts and accounts would continue to have access to the Premier Program.

44.     Omnia/NHH informed Alliant, as well as other non-healthcare Members and Sponsors, that Premier's R&R Policy would remain in effect and that Premier would continue to manage the R&R Policy.

45.     Omnia/NHH also informed Alliant, and other Sponsors, that the process for Sponsors to enroll new Member Facilities would remain the same, and that Omnia's acquisition of NHH would not impact Sponsors' "customer growth."

46.     Shortly after Omnia's purchase of NHH, Omnia/NHH requested Alliant to enter into a GPO participation with NHH (the "NHH Agreement"), which relates to Alliant and its non-healthcare Member Facilities' continued participation in the Premier Program.

47.     Omnia's CEO informed Alliant that if Alliant wanted to "continue to grow its non-healthcare business" in the Premier Program, Alliant had to sign the NHH Agreement.

48.     With no alternative, Alliant entered into the NHH Agreement.

49.     Premier LP was also a signatory to the NHH Agreement.

50. Under the NHH Agreement, Alliant has the right to sponsor non-healthcare Member Facilities in the Premier Program, manage the purchasing activities of its non-healthcare Member Facilities, and collect administrative fees for these purchases.

51. Thus, Alliant remained a Sponsor in the Premier Program as that term is defined in the R&R Policy following Omnia's acquisition of NHH and under the terms of the NHH Agreement.

52. Indeed, the NHH Agreement uses the word "sponsor" and describes Alliant's Member Facilities as "sponsored" in the program.

53. Moreover, and in addition to Omnia's express statements that the R&R Policy would remain in place and enforceable, the NHH Agreement explicitly incorporates the R&R Policy and states the parties shall comply with its terms.

**Metz Seeks a New Sponsor After its Sponsor is Acquired by Pandion**

54. Metz Culinary Management, LLC ("Metz") is a member of the Premier Program.

55. Metz was sponsored in the Premier Program by Vantage Purchasing Partners LLC ("Vantage").

56. Metz has both healthcare and non-healthcare accounts.

57. Metz's non-healthcare accounts include offerings in the food management industry.

58. In or around December 2023, Vantage was acquired by another Premier Program Sponsor, Pandion Optimization Alliance ("Pandion").

59. This acquisition constituted a "change of control" under the R&R Policy. (Ex. 1, R&R Policy, § 2.6).

60. In response, Metz invoked its right to select a new Sponsor under the R&R Policy. (*Id.*).

61. Specifically, on or around January 16, 2024, Metz issued a Request for Proposal ("RFP") and held an open solicitation seeking a new Sponsor for its healthcare and non-healthcare accounts.

62. Metz's RFP process included written proposals and in-person presentations of potential Sponsors' services and financial offerings.

63. Pandion, Alliant, and other Premier Program Sponsors participated in Metz's RFP/open solicitation.

64. Metz ultimately selected Alliant as its new Sponsor for Metz's healthcare and non-healthcare accounts.

65. Metz informed Alliant of its selection in February 2024.

66. On or about March 7, 2024, Metz submitted a Premier sponsorship transfer request form to Premier requesting Alliant as Metz's new Sponsor for Metz's healthcare and non-healthcare account.

67. Metz agreed to enter into a membership agreement with Alliant and that agreement would bring Alliant approximately $70 million in additional revenue.

**Omnia/NHH Blocks the Sponsorship Transfer**

68. Pursuant to the R&R Policy, Metz's healthcare and non-healthcare accounts should have transferred to Alliant 30 days after Metz's submission of the transfer request form, without further action by any other party. (Ex. 1, R&R Policy, §§ 2.2.6, 2.2.9).

69. However, shortly after Metz submitted its request, Omnia/NHH informed Alliant and Metz that it was blocking the sponsorship transfer of Metz's non-healthcare accounts and that Metz's non-healthcare accounts would remain sponsored by Pandion.

70. Omnia/NHH asserted that Metz's requested transfer was improper because the R&R Policy did not allow non-healthcare Member Facilities to select a new Sponsor following their former Sponsor's change of control.

71. Omnia/NHH refused to elaborate on its incorrect interpretation of the R&R Policy or give any explanation of its position, which was contrary to the plain terms of the R&R Policy.

72. Alliant and Metz disagreed with Omnia/NHH's determination and Alliant contacted Premier, which retained the ability to administer the R&R Policy.

73. Initially, Premier indicated that Omnia, the entity purporting to be Alliant's "primary GPO" was actually a Sponsor, and was in fact already the *Sponsor* of Metz's non-healthcare accounts.

74. Premier claimed that, prior to Pandion's acquisition of Vantage, Omnia had become the "exclusive sponsor" for many non-healthcare accounts, including Vantage's, pursuant to a secret Channel Partnership Agreement between Premier and Omnia that Premier refused to share with Alliant.

75. Thus, Premier stated that Metz could transfer its *healthcare* accounts to Alliant, but alleged that Vantage had not undergone a "change of control" within the past six (6) months with respect to Vantage's non-healthcare facilities because *Omnia*, rather than Vantage, was Metz's non-healthcare Sponsor at the time Vantage was acquired by Pandion.

76. Premier further suggested that Alliant was no longer a Sponsor of non-healthcare accounts under the terms of this secret agreement.

77. If accurate, Premier's statements would mean that Premier had given away, or significantly limited, Alliant's right to sponsor non-healthcare Member Facilities without Alliant's

10

knowledge or consent, and that Omnia was purporting to act as Alliant's agent and GPO when, in reality, it is Alliant's competitor.

78. Moreover, Premier's statements conflicted with statements Omnia had made to Alliant, and on which Alliant had relied in entering the NHH Agreement, including Omnia's statements that the process to enroll new members would remain the same, the R&R Policy would remain enforceable, that Alliant would remain able to sponsor non-healthcare entities in the Premier Program, and that Alliant would be able to "grow its business" as usual under the NHH Agreement.

79. Premier's position was also inconsistent with Omnia's claim that the R&R Policy's "change of control" exception was not available to *any* non-healthcare accounts. Indeed, Premier's response confirmed this transfer option *was* available to non-healthcare accounts but that it was simply inapplicable under the specific circumstance's because, according to Premier, Omnia was Metz's non-healthcare Sponsor and Omnia had had not undergone a change of control in the prior 6 months.

80. In addition, contrary to Premier's claim, Omnia has never claimed to be Metz's Sponsor.

81. Quite the opposite, when blocking and interfering with Metz's attempt to transfer its non-healthcare accounts to Alliant, Omnia/NHH repeatedly stated that Metz's non-healthcare accounts would remain sponsored by *Pandion*.

82. Given these glaring and material inconsistencies, Alliant sought clarification from Premier.

83. In April of 2024, Alliant's President, Mark Slone, and Chairman of its Board of Directors, Charles M. Stigler, met in person with Premier's Chief Commercial Officer, Andy

Brailo, to discuss the Metz sponsorship transfer, the R&R Policy, and Alliant's right to sponsor non-healthcare accounts.

84. During that discussion, Premier agreed that Metz was entitled to transfer to a new Sponsor for both its healthcare *and* non-healthcare accounts under the R&R Policy, that the R&R Policy had been followed, and that Premier would allow Metz's sponsorship transfer form to process for Metz's healthcare and non-healthcare accounts.

85. During that meeting, Brailo confirmed his understanding with Premier's General Counsel, David Klatsky, and informed Slone and Stigler that Klatsky was in agreement.

86. Relying on Premier's statements, Alliant informed Metz that its non-healthcare accounts would soon transfer.

87. However, Omnia/NHH again informed Alliant and Metz that it would not permit the transfer and continued to block the transfer.

88. In August 2024, Metz confirmed with Alliant that it still wanted Alliant to serve as the Sponsor for Metz's healthcare and non-healthcare accounts, but that if Omnia/NHH continued to block the transfer of Metz's non-healthcare accounts to Alliant, Metz would not be able to transfer its healthcare accounts to Alliant either because Metz needed all of its accounts—healthcare and non-healthcare—with the same Sponsor.

89. Omnia/NHH and Alliant met to discuss Omnia/NHH's ongoing interference with Alliant's sponsorship of Metz's non-healthcare accounts on or about August 12, 2024.

90. Alliant memorialized that meeting in a follow up email to Omnia/NHH's Chief Financial Officer, Kent Capps, dated August 15, 2024.

91. In that email, Alliant reiterated to Omnia/NHH that it would suffer significant financial harm if Omnia/NHH continued to improperly block Metz's non-healthcare account transfer.

92. Capps responded to Alliant the following day and continued to portray that Omnia was Alliant's agent, and again purported that Pandion was Metz's Sponsor, stating "Omnia will not permit the sponsorship transfer of Metz' non-healthcare accounts from **Pandion** to **Alliant Purchasing** as such transfer is not permitted by the Recruitment and Retention Policy as applicable to non-healthcare entities."

93. In closing, Capps purported that "[Omnia] value[d] [its] relationship with [its] **sponsors**, including Alliant Purchasing, and Pandion[.]"

94. On August 22, 2024, Alliant sent Omnia/NHH a formal demand letter, insisting Omnia/NHH approve the transfer request in accordance with the R&R Policy. In that letter, Alliant informed Omnia/NHH of the damages it would suffer as a result of Omnia's continued refusal to transfer Metz's non-healthcare accounts

95. Omnia/NHH responded on August 26, 2024, and continued to block the sponsorship transfer.

96. Omnia also provided Alliant with a portion of a letter that Premier had purportedly sent to Pandion, in which Premier advised that Metz could not transfer its non-healthcare accounts under the R&R Policy.

97. Given Premier's now-inconsistent statements, Alliant asked Premier to formally and unequivocally clarify its position regarding the application of the R&R Policy.

98. On November 4, 2024, Premier *confirmed* with Alliant that, contrary to Omnia's prior statements, Section 2.2.6 *does apply to non-healthcare entities.*

13

99. Thus, if Pandion is Metz's non-healthcare Sponsor (as Omnia has *repeatedly claimed*), Metz's non-healthcare accounts should have transferred to Alliant on April 6, 2024, thirty days after Metz submitted its sponsorship transfer request form.

100. However, in Premier's November 4, 2024 written response, Premier reverted back to its initial position that *Omnia* somehow was the Sponsor for Metz's non-healthcare accounts.

101. Specifically, Premier alleged that Omnia became Metz's non-healthcare Sponsor on September 22, 2023 when Vantage purportedly assigned its rights right to sponsor non-healthcare accounts to Omnia.

102. Again, Alliant had never been previously informed that Omnia, the entity purporting to act as the GPO and Alliant's agent, was a purported Sponsor and thus Alliant's competitor.

103. Premier's position is also contrary to the fact that Premier's own published membership roster identifies Pandion as Metz's Sponsor on non-healthcare accounts, not Omnia.

104. Moreover, Omnia's role as a Sponsor (if true) has also been concealed from Metz, who believes that Pandion is its healthcare and non-healthcare Sponsor. Indeed, the very reason Metz cannot transfer its healthcare accounts without its non-healthcare accounts to Alliant is because Metz wants all its business to remain *single* Sponsor, i.e., Pandion.

105. Notwithstanding, even if Omnia was Metz's non-healthcare Sponsor, Metz's March 6, 2024 transfer request form was submitted within six months from the date when Metz's non-healthcare sponsorship changed from Vantage to Omnia.

106. Alternatively, upon information and belief, Premier's claim that Omnia is Metz's Sponsor is a fabrication that Premier has concocted in an attempt to coordinate and rationalize Omnia's improper interference and blockage of Metz's sponsorship transfer request.

107.     Again, Premier's statements regarding Omnia's sponsorship rights over Metz directly contradict Omnia's repeated representations that Pandion is Metz's Sponsor and Premier's own membership roster showing that Pandion is Metz's Sponsor.

108.     In undertaking to block the transfer of Metz's non-healthcare portfolio, Omnia, Premier, Premier LP, and NHH acted in concert and in a deliberate manner to conceal or misrepresent Omnia's role as a Sponsor, breach the Premier Agreement and/or NHH Agreement, interfere with Alliant's contracts and prospective business relationships, breach fiduciary duties owed to Alliant, and engage in unlawful restraints of trade.

### COUNT I
### *Declaratory Judgment*

109.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

110.     Where "an actual controversy exists," this Court is vested with the authority to "declare the rights and other relations of any interested party seeking such declaration[.]" 28 U.S.C.S. § 2201.

111.     As described above, Omnia and/or Premier have asserted that Metz cannot transfer its non-healthcare accounts to Alliant, despite the clear language of the R&R Policy allowing such transfer.

112.     As a result, there is an actual controversy regarding whether Metz's non-healthcare accounts should have, and/or did, transfer to Alliant 30 days after Metz's submission of its sponsorship transfer request.

113. Alliant is entitled to a judgment declaring that Metz was entitled to, and/or did, transfer its healthcare and non-healthcare accounts to Alliant consistent with the parties' contracts and the R&R Policy, and requiring Premier and/or Omnia to permit and/or recognize that transfer.

## COUNT II
### *Breach of Contract*

114. The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

115. The R&R Policy is valid and enforceable contract.

116. Omnia and Premier breached the R&R Policy by, among other things, improperly interfering with and blocking Metz's sponsorship transfer request, refusing to transfer Metz's non-healthcare accounts to Alliant, and allowing or assisting Omnia in improperly blocking the sponsorship transfer requests, following Vantage's change of control.

117. As a direct and proximate result of Omnia and/or Premier's breach of the R&R Policy, Alliant has suffered, and will continue to suffer, damages, including but not limited to, actual damages, in excess of $75,000.00, exclusive of interests and costs.

## COUNT III
### *Tortious Interference*

118. The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

119. The relationship between Alliant and Metz constituted a valid business relationship under which Alliant expected to serve as the Sponsor for Metz's healthcare and non-healthcare accounts.

120. Omnia and Premier were aware of the business relationship between Metz and Alliant, and of Alliant's expectancy to serve as Metz's Sponsor for both healthcare and non-healthcare accounts.

121. Omnia and Premier wrongfully, maliciously, and/or intentionally interfered in Alliant and Metz's valid business relationship by, among other things, misrepresenting that the transfer options in R&R did not apply to non-healthcare accounts, misrepresenting Metz's true sponsor, and blocking Metz's proper request to transfer its non-healthcare accounts to Alliant without justification, causing an unreasonable and unlawful restraint on trade and competition.

122. As a direct and proximate result of Omnia's wrongful interference, Metz was unable to transfer its accounts to Alliant, and Alliant lost the business opportunity to serve as Metz's Sponsor in the Premier Program.

123. As a direct and proximate result of Omnia tortious interference, Alliant has suffered, and will continue to suffer, damages, including but not limited to, lost income, lost client relationships and future lost client relationships, lost or diminished competitive damages, and injury to its goodwill and reputation.

## COUNT IV
### *Breach of Fiduciary Duties*

124. The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

125. At all relevant times, a special relationship existed between Alliant and Defendants, whereby, among other things, Omnia and Premier served as Alliant's agents.

126. The nature of this special relationship gave rise to fiduciary duties owed by Omnia and Premier to Alliant, including the duties of disclosure, good faith, and loyalty.

127.    In the event Omnia is Metz's non-healthcare Sponsor, Premier breached fiduciary duties owed to Alliant by, among other things, conveying purported "exclusive sponsorship rights" to Omnia, which was contrary to Alliant's best interest, failing to disclose this transfer of sponsorship rights, and allowing Omnia the authority to determine the application of the R&R Policy as to Metz's non-healthcare accounts, despite Omnia's direct conflict of interest in that transaction.

128.    In the event Omnia is Metz's non-healthcare Sponsor, Omnia breached the fiduciary duties owed to Alliant by, among other things, concealing and/or misrepresenting its role as a Sponsor, and thus Alliant's competitor, acting adversely to Alliant's interest in furtherance of its own self-interest, and by blocking Metz's sponsorship request, to Alliant's detriment, despite Omnia's direct conflict of interest in that transaction.

129.    As a direct and proximate result of those breaches, Alliant has suffered and will suffer injury as a result of Defendants' breaches of these duties, and is entitled to an award of damages in an amount to be determined at trial.

## COUNT V
### *Aiding and Abetting Breach of Fiduciary Duties*

130.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

131.    At all relevant times, an agent/principal relationship existed between Alliant and Omnia, and Alliant and Premier.

132.    As Alliant's agents, Omnia and Premier owed Alliant certain fiduciary duties, including the duty of disclosure and duty of loyalty.

133.    Omnia and Premier breached fiduciary duties owed to Alliant.

18

134.     Defendants participated in each other's breaches by encouraging and/or providing substantial assistance to the breaches of fiduciary duties owed to Alliant.

135.     As a direct and proximate result of those breaches, Alliant has suffered and will suffer injury as a result of Defendants' unlawful conduct and is entitled to an award of damages.

## COUNT VI
### *Civil Conspiracy*

136.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

137.     Premier and Omnia conspired with each other to interfere in the business relationship and/or expected business advantage Alliant had with Metz, by taking steps to prevent Alliant from serving as Metz's non-healthcare Sponsor despite their knowledge of the valid business relationship and/or expected business advantage Alliant had with Metz.

138.     Premier and Omnia's tortious actions described above against Alliant were taken in order to benefit themselves, and/or each other, and/or their agents and representatives, to deprive Alliant of the sponsorship role, and ultimately blocking Metz's transfer request.

139.     Premier and Omnia acted in concert with each other pursuant to a common design and scheme and gave substantial assistance to the other in accomplishing a conspiracy to deny Alliant's sponsorship of Metz, despite their knowledge of the valid business relationship and/or expected business relationship that Alliant had with Metz.

140.     Premier and Omnia were aware that each other's conduct breached duties owed to Alliant, and despite that knowledge, provided substantial assistance and/or encouragement to the other in breaching those duties.

141. Premier and Omnia acted in concert with each other pursuant to a common design and scheme and each gave substantial assistance to the other in accomplishing a conspiracy to deprive Alliant of the sponsorship of Metz's non-healthcare accounts, in spite of Alliant's contractual and other rights.

142. As a direct and proximate result of that conspiracy, Alliant has been damaged by the actions of Premier and Omnia described above and is therefore entitled to be awarded damages including the imposition of substantial punitive damages.

## COUNT VII
### *Unfair Trade Practices*

143. The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if set forth fully herein.

144. Premier and Omnia are seeking to do business and do business within the Commonwealth.

145. Premier and Omnia are engaged in the sale of a service or output of a service trade, i.e., GPO services.

146. Premier and Omnia have acted with the unlawful intention to destroy competition, or prevent competition with Omnia and/or Pandion, by secretly providing special services or privileges to Omnia and/or Pandion, and failing to provide these same services or privileges to other Sponsors in the Premier Program upon like terms and conditions.

147. Such benefits tend to destroy competition and constitute an unfair trade practice under KRS 365.050.

148. Such benefits have caused, or will cause, injury to Alliant.

149. Alliant seeks damages and all relief available pursuant to KRS 365.070 and KRS 446.070.

WHEREFORE, Alliant respectfully requests that the Court enter judgment against Premier and Omnia and award the following relief:

a) Declaratory relief as set forth above;

b) Damages in an amount to be determined at trial, including but not limited to an award of incidental, actual, consequential, treble, and punitive damages;

c) Pre- and post-judgment interest as permitted by contract, common law, or statute;

d) An award of Plaintiff's reasonable attorney's fees, expenses, and costs as permitted by contract, common law, or statute;

e) For a trial by jury on all issues so triable; and

f) Any and all other relief to which Alliant is entitled.

Respectfully submitted,

*/s/ Grahmn N. Morgan*
Grahmn N. Morgan
Seth T. Church
Lexie J. Elder
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
Telephone: (859) 425-1000
Facsimile: (859) 425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
lexie.elder@dinsmore.com
*Counsel for Plaintiff*

## <u>VERIFICATION</u>

I have read the foregoing Amended Verified Complaint and verify that allegations contained within are true and correct to the best of my knowledge and belief.

Dated: 01/17/2025 03:32PM UTC

*Mark Slone*

Mark Slone, President
Alliant Purchasing, LLC