ALLIANT PURCHASING, LLC                                                                    PLAINTIFF

vs.

OMNIA PARTNERS, LLC and                                                                DEFENDANTS
PREMIER, INC.

## RESPONSE IN OPPOSITION TO DEFENDANT, OMNIA PARTNERS, LLC'S, MOTION TO DISMISS

Plaintiff, Alliant Purchasing, LLC ("Alliant"), submits its response in opposition to Defendant, Omnia Partners, LLC's, ("Omnia") Motion to Dismiss Alliant's Amended Complaint (the "Motion").

## INTRODUCTION

This case involves concerted, deceitful, and unlawful efforts by Omnia and Premier, Inc. ("Premier") to deprive Alliant of its rights and to interfere with Alliant's valuable business relationships. Premier and Omnia are group purchasing organizations or "GPOs." In short, a GPO leverages the collective buying power of its members to negotiate better prices or discounts with suppliers, offering cost savings, access to a network of approved suppliers, and streamlined processes for contract management. As relevant to this dispute, Premier operates a GPO Program that included both healthcare and non-healthcare entities and lines of business (the "Premier Program"). Alliant joined that program in 2015 through an agreement (the "Premier Agreement") with Premier's subsidiary, Premier Healthcare Alliance LP ("Premier LP"). (Am. Compl., ECF No. 6, ¶ 12). Under the Premier Agreement, Alliant became a member of the Premier Program and was authorized to extend membership to other entities—known as "Member Facilities"—as their

"Sponsor." (*Id.* at ¶¶ 12–15). As a Sponsor, Alliant brings Member Facilities into the Premier Program, manages their purchasing activities, and, in return, receives a portion of the administrative fees collected from the Member Facilities' purchases. (*Id.* at ¶¶ 16–18). Alliant has served as a Sponsor without incident for more than 31,000 healthcare and non-healthcare Member Facilities in the last decade, enriching Premier and its affiliates.

However, Premier and Omnia subsequently concocted a scheme to enrich themselves at the cost of Alliant by entering into a series of secret side agreements that have allegedly removed the ability of non-healthcare Member Facilities to have any say in who sponsors them while apparently unilaterally crowning Omnia as their sole Sponsor. In short, Premier created a new entity, Non-Healthcare Holdings, LLC ("NHH"), and "contributed" Premier's non-healthcare contracts to it. Omnia then purchased NHH. Omnia has since used that position, with the cover of Premier's interpretation of its Recruitment and Retention Policy (the "R&R Policy"), to block transfers of Member Facilities—including the transfer of Metz Culinary Management, LLC ("Metz")—to Alliant. Those actions led Alliant to file this litigation.

Omnia's motion to dismiss asserts that it is not a proper party to this litigation and that Alliant's Amended Complaint fails to adequately plead its claims. The thrust of the first argument is that Omnia is not a signatory to any contract with Alliant. However, Omnia has agreed to be bound by the R&R Policy, which constitutes a contract in and of itself. At worst, whether the R&R Policy is a binding contract presents an issue of fact that is inappropriate for resolution before trial, including through Omnia's Motion. Moreover, the existence of a contract is not a necessary element for the remainder of Alliant's claims. Omnia's arguments regarding each of those other claims miss the mark because they ignore the deferential standard by which the Court reviews a motion to dismiss, taking the allegations of the Amended Complaint as true and drawing inferences

in favor of Alliant. Applying that standard—rather than the higher and incorrect standard Omnia attempts to impose—demonstrates that each of Alliant's claims are adequately pled. In any event, Omnia's motion seeks dismissal with prejudice, which is simply wrong. If any portion of Omnia's motion is granted, Alliant seeks leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

## BACKGROUND

Alliant serves as a Sponsor for healthcare and non-healthcare Member Facilities in the Premier Program. From 2015 up to 2024, Alliant did so under the Premier Agreement. However, in May 2023, Premier created NHH and "contributed" Premier LP's non-healthcare contracts, sponsors, and members (collectively, the "non-healthcare accounts") to NHH. (Am. Compl., ECF No. 6, ¶¶ 37–38). Shortly thereafter, Omnia acquired NHH from Premier in a $680 million transaction. (*Id.* at ¶ 39). At that time, Omnia became the primary GPO for the non-healthcare accounts. (*Id.* at ¶ 41). Omnia represented and assured the acquired non-healthcare accounts that business would continue as usual: the non-healthcare accounts would continue to participate in the Premier Program, the process of sponsoring Member Facilities would stay the same, and the R&R Policy would remain in effect. (*Id.* at ¶¶ 43–45). However, Omnia demanded that Alliant execute a new contract with NHH (the "NHH Agreement"). Omnia's CEO assured Alliant that it would be able to grow its non-healthcare business in the Premier Program under the NHH Agreement, and that, if Alliant did not sign the NHH Agreement, it would lose access to the Premier Program. Based on those material representations, in January 2024, Alliant entered into the NHH Agreement, which was in all material respects the same as the Premier Agreement. (*Id.* at ¶ 49).

In December 2023, Vantage Purchasing Partners LLC ("Vantage"), a Premier Program Sponsor, was acquired by another Sponsor, Pandion Optimization Alliance ("Pandion"). (*Id.* at ¶

58). Prior to this transaction, Vantage was the Sponsor for Metz. However, the R&R Policy allowed Metz to change its Sponsor whenever its current Sponsor underwent a "change of control" meaning a situation where "all or substantially all of the assets of, the sponsor are sole, transferred, or assigned to an unrelated third party[.]" (*Id.* at ¶¶ 29–30). Metz elected to avail itself of that provision and issued a request for proposals and open solicitation for a new Sponsor. (*Id.* at ¶ 61). Alliant, Pandion, and other Premier Program Sponsors responded, seeking to serve as Metz's Sponsor. (*Id.* at ¶ 63). Metz ultimately selected Alliant as its new Sponsor. (*Id.* at ¶¶ 64–65). Metz and Alliant entered into a valid business arrangement, agreeing that Alliant would Sponsor Metz's healthcare and non-healthcare accounts. (*Id.* ¶¶ 65–67). Metz and Alliant executed a sponsorship transfer form, which Metz submitted to Premier in March 2024. (*Id.* at ¶ 66). Per the R&R Policy, Metz's accounts should have automatically transferred to Alliant thirty days later, concluding this matter. (*Id.* at ¶¶ 32, 68).

This otherwise standard and routine transaction, however, was abruptly and wrongfully halted only days later when Omnia contacted Alliant and Metz and stated that it—*Omnia*—would not allow Alliant to serve as Metz's Sponsor. (*Id.* at ¶¶ 69–71). Omnia asserted that the R&R Policy did not even apply to non-healthcare accounts, that the transfer was improper, and that Metz would remain with its then-current Sponsor, Pandion. (*Id.*). Omnia refused to explain the basis of its interference or interpretation of the R&R Policy. (*Id.*). Consistent with the R&R Policy, Alliant requested Premier's intervention in interpreting and enforcing the R&R Policy. (*Id.* at ¶ 72). In response, Premier confirmed that the sponsorship transfer methods under the R&R Policy *did* apply to non-healthcare accounts. (*Id.* at ¶ 79). However, Premier claimed, apparently unbeknownst to everyone else involved, that *Omnia* was and had been Metz's non-healthcare Sponsor since July 2023 as a result of the hidden side dealings between Premier and Omnia in

relation to the NHH deal. (*Id.* at ¶¶ 73–76). Thus, according to Premier, Metz could not change Sponsors for its non-healthcare accounts because there was no "change of control," as *Omnia* had not undergone one, even if Vantage or Pandion had. (*Id.*). Premier also suggested that *Alliant* was no longer a Sponsor of any non-healthcare accounts either, and that, under their illicit contract, Premier had crowned Omnia as the exclusive Sponsor of each and every non-healthcare account in the Premier Program worldwide. (*Id.* at ¶ 76).

Premier's explanation was non-sensical. Alliant was still formally recognized as a Sponsor on Premier's official membership roster as it had been for the last decade. (*Id.* at ¶¶ 103, 107). And on that official membership roster, Omnia was not identified as a Sponsor for Metz—*Pandion* was. (*Id.*). Moreover, Omnia had purported to be the primary GPO of the non-healthcare accounts, not the exclusive *Sponsor* of them. (*Id.* at ¶¶ 77, 102). Indeed, to induce Alliant to sign the NHH Agreement, Omnia had assured Alliant the process of sponsoring Member Facilities would remain the same and that Alliant could continue to grow its non-healthcare business in the same manner it had under the Premier Agreement, i.e. as a Sponsor. (*Id.* at ¶¶ 43–48). Neither Premier nor Omnia had ever indicated that Alliant was no longer a Sponsor, and Alliant certainly never agreed to relinquish its right to Sponsor in the Premier Program, as Premier and Omnia now allege. (*Id.* at ¶¶ 102, 107). Moreover, Premier's statements directly conflicted with Omnia's self-serving claim that the R&R Policy was per se inapplicable to non-healthcare accounts and that *Pandion* would accordingly remain Metz's Sponsor. (*Id.* at ¶¶ 78–79, 92). Given these inconsistencies, Alliant sought further clarification. (*Id.* at ¶ 82).

When Alliant representatives spoke to Premier representatives in person, Premier shifted its original position and affirmatively agreed that the R&R Policy permitted Alliant's sponsorship of Metz's non-healthcare accounts and that Metz's non-healthcare accounts would transfer to

Alliant. (*Id.* at ¶¶ 83–86). But when Alliant attempted to confirm Premier's verbal acknowledgements in writing, Premier reverted back to its claim that there was no "change of control" because Omnia was Metz's Sponsor. (*Id.* at ¶ 98). Meanwhile, in Alliant's ongoing conversations with Omnia and NHH, Omnia continued to insist the transfer was improper because the R&R Policy was wholly inapplicable to non-healthcare accounts and Pandion was Metz's rightful Sponsor. (*Id.* at ¶¶ 87, 92–93). Simultaneously, however, Omnia would point to Premier's written statements—which, again, were entirely inconsistent with Omnia's position—to contend that the issue had been settled and was closed for further discussion. (*Id.* at ¶ 96). Soon, it became evident to Alliant that Omnia and Premier were not interested in interpreting and applying the R&R Policy in good faith; rather, they were intent on manufacturing ways to inequitably and incorrectly apply it to Alliant. (*Id.* at ¶¶ 106–108). Accordingly, Alliant commenced this action against Omnia and Premier, seeking declaratory relief and damages for Defendants' various breaches and concerted efforts to tortiously interfere with Alliant's relationship with Metz.

## **ARGUMENT**

I.      **Alliant's Amended Complaint states claims upon which relief can be granted.**

Under the liberal pleading standards in the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). And, when the complaint contains well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, all inferences and

ambiguities must be resolved in plaintiff's favor at this stage. *Childress v. Bank of Am., N.A.,* No. 18-154-DLB-CJS, 2019 U.S. Dist. LEXIS 134410, at *25 (E.D. Ky. Aug. 9, 2019).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations simply must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly*, 550 U.S. at 555–56. "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563.

Considering all of Alliant's factual allegations as true, the Amended Complaint states claims that plausibly give rise to an entitlement of relief. Omnia's Motion must therefore be denied.

### A. Alliant has stated a claim for breach of contract.

Alliant's claim for breach of the R&R Policy, which Omnia chose to adopt and used as a purported basis when blocking Alliant's business relationship with Metz, is proper. (Am. Compl., ECF No. 6, ¶¶ 34, 70–72). In its Motion, Omnia contends that this claim cannot survive because the R&R Policy is not a contract, and Omnia is not a party to the NHH Agreement.[1] (Mot., ECF

---

[1] Although Omnia emphasizes there is "corporate separateness" between it and NHH, the facts indicate that Omnia routinely acted in place of NHH, asserted NHH's rights on its own, and exercised complete and unilateral control over NHH. Thus, NHH is merely an alter-ego or instrumentality for Omnia. As alleged, *Omnia* facilitated the execution of the NHH Agreement between NHH and Alliant. (Am. Compl., ECF No. 6, ¶¶ 46–49). Kent Capps, *Omnia's* Chief Financial Officer signed the NHH Agreement for NHH. (*See* ECF No. 16-2 (filed under seal)). *All*

16-1, 14–15). Omnia's argument is premised on the incorrect assertion that the R&R Policy cannot be a contract. But that argument is contrary to Kentucky law, which refutes Omnia's position.

Kentucky courts have long recognized the binding nature of contracts implied in fact, which arise from "the circumstances, the conduct, acts, or relation of the parties, rather than from their spoken words." *Univ. of Ky. v. Regard*, 670 S.W.3d 903, 919 (Ky. 2023). The only difference between an implied and express contract is the "mode of proof." *Id.* (citing *Kellum v. Browning's Adm'r*, 231 Ky. 308, 21 S.W.2d 459, 465 (Ky. 1929)). Policies, procedures, and regulations frequently give rise to a contract implied in fact. *Jones-Turner v. Yellow Enter. Sys., LLC,* No. 3:07-CV-00218-CRS, 2014 U.S. Dist. LEXIS 43942, at *5–7 (W.D. Ky. Mar. 31, 2014) (personnel policy which all parties knew of was implied contract); *Stathis v. Univ. of Ky.,* No. 2004-CA-000556-MR, 2005 Ky. App. Unpub. LEXIS 886, at *26 (Ky. App. May 13, 2005) (organization's bulletins, circulars, and regulations created implied contract; breach was a question of fact for jury). Under these circumstances, the question of whether a policy creates an implied contract is a factual one. *Beard v. McCammish Mfg. Co.,* No. 1:03CV-107-R, 2003 U.S. Dist. LEXIS 29014, at *5 (W.D. Ky. Dec. 9, 2003) (denying motion to dismiss because plaintiff was entitled to submit proof on whether policies and procedures created an implied contract).

---

communications pertaining to this dispute have come from *Omnia*. NHH does not appear to have any of its own employees, officers or agents, but rather operates entirely through the principals of Omnia. In fact, NHH and Omnia operate from the exact same address and suite. Omnia's "high degree of control" of NHH, overlap in management, and shared physical location *strongly* indicate NHH is merely Omnia's alter-ego. *Johnson v. BLC Lexington, SNF, LLC,* Civil Action No. 5: 19-064-DCR, 2019 U.S. Dist. LEXIS 198516, at *15 (E.D. Ky. Nov. 15, 2019) (citing *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 163 (Ky. 2012)). But that is a matter for discovery and Omnia's arguments at this early stage do not justify dismissal of the Amended Complaint.

When taken as true, the allegations in the Amended Complaint adequately plead that the R&R Policy created an implied contract between Alliant and Omnia. Among other things, Alliant has alleged that Omnia was aware of the R&R Policy, informed its acquired non-healthcare accounts that the process to enroll and sponsor new members would stay the same, and confirmed the R&R Policy would remain in effect and apply to Omnia's acquired non-healthcare accounts. (Am. Compl., ECF No. 6, ¶¶ 44–45). In addition, Omnia treated the R&R Policy as a binding agreement when it referred to and relied upon the R&R Policy in blocking Alliant's sponsorship of Metz. (*Id.* at ¶¶ 69–72). An implied contract to abide by the terms of the R&R Policy can be reasonably inferred from the parties' alleged conduct, making dismissal improper at this stage. *Beard,* 2003 U.S. Dist. LEXIS 29014, at *5.

Alternatively, Omnia argues that if the R&R Policy *is* a contract, Omnia cannot be held liable for its improper application because Omnia had no authority to administer its terms. And yet, as alleged, that is precisely what Omnia did. Upon discovering Alliant and Metz's valid business relationship, *Omnia* contacted the parties to state that *Omnia* would not allow the sponsorship transfer based on *Omnia's* interpretation that the R&R Policy did not apply to non-healthcare accounts—a position that even its co-conspirator Premier has rejected. (*Id.* at ¶¶ 69–72, 92). The email from Omnia's CFO, Kent Capps, quoted in Paragraph 92 of the Amended Complaint, is just one of many instances where *Omnia* purported to apply the R&R Policy that it now claims to have no control over. For example, Omnia stated:

- ". . . to confirm **OMNIA Partners** will not approve [Metz's] transition from Pandion to Alliant" (Mar. 14, 2024 Email to Metz, Ex. A); and

- "To reiterate, **OMNIA Partners** has denied the transfer request for Metz. If you don't want to speak, I assume you understand that Metz will remain a customer under Pandion." (Mar. 14, 2024 Email to Alliant, Ex. B).[2]

Omnia's belated admission that it was unauthorized to engage in the very conduct it is alleged to have taken only demonstrates that Omnia did, in fact, violate the R&R Policy, underscoring Alliant's claim against it.

Finally, Omnia argues that Alliant is advancing Metz's rights as opposed to Alliant's. This argument must be rejected. In providing Member Facilities with the ability to transfer sponsorship following their current Sponsor's "change of control," the R&R Policy necessarily conveys an equal right for Sponsors to obtain the business of Member Facilities under the exception. (*Id.* at ¶¶ 20–23). Indeed, a change in sponsorship inherently requires an agreement between the Member Facility *and* its new Sponsor. Broadly, the change of control exception creates a right for both members *and Sponsors* to engage in business that is typically precluded under the terms of the R&R Policy. As alleged in the Amended Complaint, Omnia's actions prevented *Alliant* from engaging in rights protected by the R&R Policy which resulted in damage *to Alliant*. Accordingly, the Amended Complaint properly asserts that *Alliant's* rights under the R&R Policy were violated. Dismissal of this claim is improper.

## B. Alliant has stated a claim for tortious interference.

The Amended Complaint sufficiently states a claim for tortious interference against Omnia. Under Kentucky law, a claim for tortious interference requires the following six elements:

> (1) the existence of a valid business relationship or expectancy; (2) defendant was aware of the relationship or expectancy; (3) defendant intentionally interfered; (4)

---

[2] These communications are referred to in the Amended Complaint, (*see* Am. Compl., ECF No. 6, ¶¶ 69–70), and may be considered at this stage. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

defendant's motive in doing so was improper; (5) causation; and (6) special damages.

*PBI Bank, Inc. v. Signature Point Condos. LLC*, 535 S.W.3d 700, 716 (Ky. App. 2016). Here, each and every one of these six elements is satisfied. Alliant has alleged: (1) a valid business relationship or expectancy existed between Alliant and Metz, (Am. Compl. ECF No. 6, ¶¶ 64–67, 119); (2) that Omnia was aware of this relationship or expectancy, (*Id.* at ¶¶ 69–71, 91, 120); (3) that Omnia intentionally interfered with this relationship or expectancy, (*Id.* at ¶¶ 69–71, 81, 87–89, 92, 95, 105–108, 121); (4) that Omnia's motives motive behind the interference was improper, (*Id.* at ¶¶ 70–71, 81, 84-87, 106–108, 121); (5) causation, (*Id.* at ¶¶ 69, 87–88, 5, 104, 122–123); and (6) special damages, (*Id.* at ¶¶ 122–123).

In its Motion, Omnia does not challenge five of the six, arguing only that there is no proof of the fourth factor, Omnia's improper motive. (Mot., ECF No. 16-1, 15–17). Alternatively, Omnia asserts that Alliant's claim must fail if Omnia can establish its actions were taken in good faith. (*Id.* at 17). Omnia's arguments are premature and improper on a motion to dismiss. Indeed, "[q]uestions like 'good faith,' 'improper purpose,' and 'motive' are fact questions properly decided by a jury." *Prime Contracting, Inc. v. Wal-Mart Stores, Inc.,* No. 06-383-JBC, 2008 U.S. Dist. LEXIS 56449, at *19 (E.D. Ky. July 22, 2008) (quoting *Uppal v. Gateway Regional Health Sys., Inc.,* 2005 WL 2323174 (Ky. Ct. App. Sept. 23, 2005)). And Federal Rule of Civil Procedure 9(b) expressly provides "malice, intent, knowledge, and other conditions of a person's mind *may be alleged generally*." Tellingly, the cases cited in Omnia's Motion all involve pleadings significantly later in litigation, after extensive discovery or a trial had occurred, rather than at this early stage. *See Nat'l Coll. Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988) (examining the underlying tortious interference claim *in light of the evidence and defenses presented at trial*); *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.,* 242 F. Supp. 2d 438, 445 (W.D. Ky. 2003)

11

(dismissing tortious interference claim on motion for summary judgment *nearly three (3) years into litigation*).

In any event, the Amended Complaint contains numerous allegations that plausibly demonstrate that Omnia acted with an improper motive and not in good faith. The Amended Complaint alleges Omnia's actions were unjustified, intentional, wrongful, malicious, and improper, which are sufficient to satisfy the "improper motive" factor at the pleadings stage. (Am. Compl., ECF No. 6, ¶ 121); *Greencity Demo, LLC v. Wood Env't & Infrastructure Sols., Inc.,* No. 3:19-CV-146-RGJ, 2021 U.S. Dist. LEXIS 14698, at *13 (W.D. Ky. Jan. 26, 2021) (allegations that defendant's conduct was intentional, unethical and malicious satisfied "improper motive" element and dismissal was improper); *Mohr Partners, Inc. v. CBRE Grp., Inc.,* No. 3:19-CV-677-RGJ, 2020 U.S. Dist. LEXIS 212013, at *16 (W.D. Ky. Nov. 12, 2020). While not required, the Amended Complaint *further* alleges that Omnia's interference was advanced through intentional misrepresentations the R&R Policy and/or Omnia's relationship with Metz,[3] and that Omnia's interference resulted in unreasonable restraints on trade and competition. (Am. Compl., ECF No. 6, ¶ 121). These allegations further demonstrate Omnia's improper motive. *Hornung,* 754 S.W.2d at 857.

Alliant's Complaint contains detailed allegations supporting each and every element of its tortious interference claim. Omnia's Motion to dismiss this claim must be denied.

---

[3] Alliant denies Premier's claim that Omnia is the exclusive Sponsor of the non-healthcare accounts, and Alliant and Pandion are merely "aggregators" or "Channel Partners" for their Member Facilities. However, if true, then Metz's request to transfer its business to Alliant would not even require an exception under the R&R Policy. Indeed, the R&R Policy only limits the activity of *Sponsors,* not "aggregators" or "Channel Partners." In this instance, Omnia's interference would be based on its intentional concealment of the parties' true relationship, and its deceptive misrepresentation that the R&R Policy prohibited Alliant and Metz's business relationship when, in reality, the R&R Policy would be wholly inapplicable to the matter at hand.

**C. Alliant has stated a claim for breach of fiduciary duty and aiding and abetting.**

The Amended Complaint alleges that Defendants breached their fiduciary duties and aided and abetted each other in those breaches. (Am. Compl., ECF No. 6, ¶¶ 124–35). Omnia challenges both counts on a single ground: that Defendants did not expressly agree to be Alliant's fiduciary, and thus no fiduciary relationship existed with Alliant. (Mot., ECF No. 16-1, 17–18). Omnia's argument is inconsistent under Kentucky law, which recognizes that fiduciary relationships may arise informally from the conduct or undertaking of the purported fiduciary. *Flegles, Inc. v. TruServ Corp.,* 289 S.W.3d 544, 552 (Ky. 2009).

In *Security Trust Co. v. Wilson*, 210 S.W.2d 336 (Ky. 1948), for example, the Kentucky Supreme Court stated with approval the following definition of a fiduciary relationship:

> The [fiduciary relationship] may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.

*Id.* at 338 (citation omitted). One circumstance in which a fiduciary relationship can arise is in the context of agency. *Calloway Cleaning & Restoration, Inc. v. McFarland (In re McFarland),* Nos. 16-21587, 17-2004, 2018 Bankr. LEXIS 451, at *17 (Bankr. E.D. Ky. Feb. 20, 2018) (observing agent owes fiduciary duty to principal); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 818 (E.D. Ky. 2013). Ultimately, the determination on whether a fiduciary relationship exists is "fact-specific to the relationship in question." *Scatuorchio*, 941 F. Supp. 2d at 818.

Alliant's complaint has alleged the existence of a fiduciary relationship between Defendants and Alliant. Among other things, Alliant has alleged that Premier and Omnia are GPOs

that service Alliant's healthcare and non-healthcare accounts and business.[4] (Am. Compl. ¶¶ 7–8, 12–13, 41–42). Alliant has explained that GPOs act in furtherance of their members' interests by negotiating favorable contracts with vendors and by purchasing goods and services at discounted rates on their members' behaves, which Omnia concedes in its brief. (*Id.* at ¶ 7; Mot., ECF 16-1, 5). In this capacity, Premier and Omnia acted as purchasing agents for their members and Sponsors, including Alliant. (Am. Compl., ECF No. 6, ¶¶ 13, 42, 123).

More specifically, Alliant has detailed Omnia's representations that Omnia would facilitate the growth of Alliant's business. (*Id.* at ¶¶ 46–48). Omnia *assured* Alliant nothing would change from the way Sponsors had functioned under the Premier Agreement. (*Id.* at ¶¶ 45, 47, 93, 128). And Omnia emphasized the value of its relationship with "Omnia *Sponsors*", and specifically Alliant. (*Id.* at ¶¶ 45, 47, 93, 128). In sum, the allegations plausibly establish that Omnia portrayed it would act in good faith towards Alliant and with due regard for Alliant's interests. As a result, Omnia, gained Alliant's trust and confidence—the core of a fiduciary relationship. Alliant agreed to enter into a contract with Omnia's subsidiary, the NHH Agreement, based on those representations, which further provided, among other things, that Alliant would not engage with GPOs outside of Omnia, Premier, and their subsidiaries. (*Id.* at ¶ 47; *see also* ECF 16-2 at §§ 3.2,

---

[4] Although Omnia now disputes its role as Alliant's GPO, its claim is contrary to statements previously made to Alliant and, in fact, to the public at large. Indeed, following its acquisition of NHH, Omnia stated in a press release: "Following the close of the [NHH] transaction, **OMNIA** will become the **primary GPO** for Premier's non-healthcare members . . . ." Press Release, Omnia Partners, LLC, OMNIA Partners Enters into Definitive Agreement with Premier, Inc. to Divest Non-Healthcare GPO Operations (June 14, 2023), https://www.omniapartners.com/about-us/in-the-news/premier-inc-to-divest-gpo. In any event, Omnia's role in this dispute is properly detailed in Alliant's Complaint and must be taken as true at this stage. (Am. Compl., ECF No. 6, ¶¶ 41–42).

3.3 (filed under seal)). As a result, it is clear that Omnia, like Premier, owes fiduciary duties to Alliant.

In any event, it is clear that Premier owed fiduciary duties to Alliant and the Amended Complaint alleges that Omnia aided and abetted Premier in those breaches. In fact, Premier made its duties explicit in the Premier policies and procedures that govern the Premier Program, including the activities of Alliant and Omnia within the bounds of that program. For example, the Group Purchasing Code of Conduct, available to all members and Sponsors, provides that "[e]ach Premier GPO [defined as Premier LP and its "affiliates"] *acts first and foremost as a representative* of its [m]ember organizations", and expressly confirms Premier is the "purchasing *agent*" for its members. (Group Purchasing Code of Conduct, Ex. C, 1, 7). Premier further acknowledges its duty to act "ethically, fairly and accountably" towards members. (*Id.*, at intro). Similarly, in Premier's Business Code of Conduct, Premier agrees to abide by principles of fair competition, expressly promising that "Premier will not make illegal or inappropriate agreements with competitors concerning [Premier] members . . . or otherwise seek to limit competition" (Business Code of Conduct, Ex. D, 16).

The foregoing allegations plausibly establish Alliant reposed a special confidence in Premier and Omnia, which in turn were bound to act in good faith and with due regard towards Alliant. Accordingly, the Amended Complaint plausibly establishes a fiduciary relationship between Alliant and Defendants, which is the only element challenged in Omnia's Motion. Those issues present questions of fact that are ripe for discovery and inappropriate for resolution on a motion to dismiss.

**D. Alliant has stated a claim for civil conspiracy.**

The Amended Complaint states a claim for Civil Conspiracy, satisfying all elements required under Kentucky law:

> (1) an agreement or combination expectancy ( 2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal.

*Greencity,* 2021 U.S. Dist. LEXIS 14698, at *14–15 (citing *Brown v. Student Loan Xpress, Inc.*, No. 5:11-CV-00090-TBR, 2012 U.S. Dist. LEXIS 40878, at *9 (W.D. Ky. Mar. 26, 2012)).

Indeed, Alliant has pleaded Defendants' unlawful conspiracy in great detail, alleging, for example, that Defendants, and their subsidiaries, acted in a coordinated effort to intentionally misrepresent the R&R Policy, conceal the nature of their relationship with each other and others, and assist each other in breaching the R&R Policy and violating Alliant's rights thereunder. (Am. Compl., ECF No. 6, ¶¶ 106–107, 137). Alliant has also expressly alleged that, through these means and others, Defendants engaged in a concerted effort to interfere with Alliant's valid business relationship with Metz. (*Id.*). This Court has refused to dismiss complaints containing similar allegations. *See Brown,* 2012 U.S. Dist. LEXIS 40878, at *27 (discovery on civil conspiracy claim was necessary to determine if defendants misrepresented terms of agreement in furtherance of conspiracy); *see also Mitchco Int'l v. Commonwealth,* No. 2020-CA-1250-MR, 2021 Ky. App. Unpub. LEXIS 589, at *15 (App. Oct. 8, 2021) (dismissal of civil conspiracy claim reversible error; plaintiff sufficiently alleged defendants acted together to breach contracts and interfere with plaintiff's business).

Omnia willfully ignores these numerous allegations, instead suggesting that Alliant's civil conspiracy "simply recasts" Alliant's breach of contract claim and lacks an underlying tort. (Mot., ECF No. 16-1, 19-20). This argument is without merit. The Amended Complaint expressly

16

confirms that this claim arises from Defendants' underlying tortious conduct and *tortious interference* with Alliant and Metz's business relationship, which has been sufficiently pleaded for the reasons explained in that section above. (*Id.* ¶¶ 108, 137–139). Because Alliant has stated a claim for tortious interference, the civil conspiracy claim cannot be dismissed for lacking an "underlying tort." *See Greencity Demo,* 2021 U.S. Dist. LEXIS 14698, at *15 (denying motion to dismiss claim for civil conspiracy because plaintiff had stated a claim for the underlying tort of tortious interference).

### E.  Alliant has stated a claim under KRS 365.050.

In its Motion, Omnia seeks dismissal of Alliant's unfair trade practices claim because, it asserts, Alliant has only offered a formulaic recitation of the elements of its claim under KRS 365.050. (Mot., ECF No. 16-1, 20–21). In advancing this argument, Omnia ignores the numerous allegations throughout the Amended Complaint that support this claim that Alliant expressly incorporated by reference into the substantive claim. (Am. Compl., ECF No. 6, ¶ 143). In any event, "[o]n a motion to dismiss, *the entirety of the complaint* and its attachments are to be considered, resolving inferences and ambiguities in a plaintiff's favor." *Childress,* 2019 U.S. Dist. LEXIS 134410, at *25 (emphasis added); *Cahoo v. SAS Analytics Inc.,* 912 F.3d 887, 895 n.3 (6th Cir. 2019) (when evaluating plaintiff's claims on a motion to dismiss the courts will consider the conduct alleged throughout the entire pleading—regardless of what count it appears in). When properly viewed in its entirety, the Amended Complaint states a claim under KRS 365.050.

That statute prohibits certain practices that tend to short circuit competition in the free market and provides, in its entirety:

> The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment or allowance tends to destroy competition, is an unfair trade practice, and no person shall resort to such trade practice.

KRS 365.050. The allegations in the Amended Complaint give rise to a number of potential violations under this statute. For example, to the extent Omnia is the exclusive Sponsor for non-healthcare accounts, Alliant has alleged this special privilege was extend only to Omnia, concealed from Alliant, and not offered to other purchasers, which has harmed competition. (Am. Compl., ECF No. 6, ¶¶ 77, 104, 127–28, 121, 146, 147). Alternatively, if Pandion is Metz's Sponsor, Alliant has alleged that Defendants have concealed a special privilege or benefit held by Pandion, allowing it to circumvent the terms of R&R Policy, a privilege that has not been extended to like purchasers or Alliant, likewise harming competition. (*Id.* at ¶¶ 92, 98, 99, 106, 107, 146, 147). There is ample support for this claim throughout the Amended Complaint, which must be considered in its entirety and in the manner most beneficial to Alliant. Omnia's Motion to dismiss this count must be denied.

## II.     Alliant's Request for Declaratory Judgment is Proper

Alliant has also sought declaratory relief, seeking a judgment regarding the correct application of the R&R Policy and its right to do business with Metz thereunder. (*Id.* at ¶¶ 109–113). In response, Omnia has challenged the requested relief on the basis that Omnia is not a proper party to this count, and because, according to Omnia, Alliant's relief impacts the rights of non-parties. (Mot., ECF No. 16-1, 12–14). Both arguments fail.

Omnia's assertion that it is an improper party is based on its claim that Omnia has no authority to allow or prohibit Alliant's business relationship with Metz under the R&R Policy. (*Id.* at 13). Thus, Omnia argues that even if declaratory relief is granted, Omnia does not have the right

to effectuate the relief. (*Id.*). However, the inherent issue with Omnia's argument is that Omnia has purported to act with such authority throughout this dispute. As alleged in the Amended Complaint, Omnia, expressly on behalf of itself and NHH, and repeatedly, on numerous occasions, stated that "*Omnia*" would not permit Alliant to service Metz's accounts. (Am. Compl., ECF No. 6, ¶¶ 70–72, 87, 95; Mar. 14, 2024 Email to Metz, Ex. A; Mar. 14, 2024 Email to Alliant, Ex. B). Accordingly, Alliant seeks a ruling that the sponsorship transfer was proper and/or effectuated under the R&R Policy and requiring Premier and/or Omnia—to the extent it has purported to exercise authority under the NHH Agreement, R&R Policy, or otherwise—to permit and/or recognize that transfer. Omnia elected to insert itself in this dispute and acted with the purported authority to do so. Given its direct involvement, the requested relief is both proper and necessary to settle the controversy at hand.

Second, Alliant is not seeking to enforce nor infringe on the rights of any third parties as Omnia purports. As alleged in the complaint, Alliant and Metz entered into a business relationship that was to be finalized thirty days after Metz submitted its transfer request form with no further action by any other party. (*Id.* at ¶ 32). Defendants, however, refused to recognize or permit the transfer on the basis that the R&R Policy forbids it. (*Id.* at ¶¶ 78-79, 106). In Count I, Alliant has asked the court to declare that the transfer took place under the R&R Policy *or* that the transfer was permissible under the R&R Policy, contrary to Defendants' assertions otherwise. In doing so, Alliant advances its own rights to serve as a Sponsor for Member Facilities under its own agreements—not to enforce Metz's rights for it. Nor does Alliant seek to have the Court compel Metz to transfer its business to Alliant—it seeks only a judgment that Alliant was authorized to serve as Metz's Sponsor following a valid transfer under the R&R Policy. No other parties have claimed a right in this action, and the requested relief can be completely afforded with current

parties. Fed. R. Civ. P. 19(a)(1); *Davis v. Owners Ins. Co.,* 29 F. Supp. 3d 938, 944 (E.D. Ky. 2014) (third-party not necessary when declaratory action was based on a contract dispute between defendant and plaintiff); *N. Am. Specialty Ins. Co. v. Pucek,* No. 5:08cv486-JMH, 2009 U.S. Dist. LEXIS 93420, at *6 (E.D. Ky. Sep. 30, 2009) (complete relief could be afforded without additional parties when dispute rested on interpretation of contract between named parties and no other party claimed a right in the action).

### III.    Omnia is a Proper Party to this Dispute

More broadly, Omnia has argued that it should be dismissed from this action because it is not proper party to this dispute. In sum, Omnia attempts to avoid liability by pointing the finger at everyone else—Premier, as the administrator of the R&R Policy; Premier LP, as party to the Channel Partnership Agreement ("CP Agreement"); and NHH, as party to the CP Agreement and NHH Agreement.

The issue with this argument, however, is that Omnia has made *itself* an integral party in this matter by purporting to exercise authority under the NHH Agreement and R&R Policy. Alliant's claims against Omnia arise from *Omnia's* actions and statements—not the contractual obligations of other parties. To be sure, Alliant believes that Premier, Premier LP, and NHH have violated various other duties and contractual promises. But the fact that Alliant asserts claims against them does not mean that the claims against Omnia must fail. As alleged, Omnia represented itself as Alliant's primary GPO on non-healthcare accounts. (Am. Comp., ECF No. 6, ¶ 41). Omnia confirmed the R&R Policy would remain in effect. (*Id.* at ¶ 44). And Omnia assured Alliant it would be able to continue to grow its non-healthcare business. (*Id.* at ¶¶ 45, 47). But then, when Alliant attempted to do so, Omnia improperly interfered. (*Id.* at ¶ 92). In doing so, Omnia misrepresented the R&R Policy and the nature of the relationships between Premier, Premier LP,

NHH, Metz, Pandion, and Vantage to its benefit and Alliant's detriment. Moreover, if it is true that Omnia is Metz's Sponsor, Omnia created and promptly concealed a direct conflict of interest in the outcome of this dispute. (*Id.* at ¶ 92, 127–28). Based on the alleged conduct, which must be taken as true at this stage, Omnia's role as a "proper party" to this action cannot be understated.

## IV. The Ongoing Arbitration is not a Basis for Dismissal

Omnia's Motion also half-heartedly contends that this case should be dismissed because Alliant's true claims lie in the ongoing arbitration between Alliant and Omnia's subsidiary NHH, and because there is a risk of inconsistent judgments with that arbitration if this litigation continues. (Mot., ECF No. 16-1, 4). Omnia's argument ignores both the scope of Alliant's claims and Omnia's role in creating these parallel proceedings. As detailed above, Alliant has asserted valid, independent, and discrete claims against Omnia, a proper party, based on Omnia's own conduct and statements. While there is, of course, some factual overlap, the mere existence of related proceedings does not mandate dismissal of this action. Omnia's efforts to avoid accountability by pointing to Alliant's arbitration with NHH is both legally improper and factually disingenuous.

As Omnia notes, the NHH Agreement contains a mandatory arbitration provision. Because Alliant has valid claims against both NHH *and* Omnia, Alliant requested that Omnia agree to arbitrate Alliant's claims against it in the NHH arbitration prior to filing this lawsuit. Omnia refused. Accordingly, this case was filed asserting Alliant's meritorious claims against the parties who were not signatories to the relevant arbitration agreements. Alliant disagrees that there is any risk of inconsistent judgments in this proceeding and the arbitration, but if there are, it is a risk created by *Omnia.* Alliant is entitled to pursue its distinct claims against Omnia and NHH, even if it must do so in separate forums.

**V.      Dismissal with prejudice is improper and Alliant should be granted leave to amend if any claims are dismissed.**

For the reasons herein, Alliant's Amended Complaint states detailed, plausible, and viable claims against Omnia, particularly at this stage where all alleged facts are taken as true and all inferences and ambiguities must be resolved in Alliant's favor. Notwithstanding, in the event the Court believes Alliant has failed to state any one of its claims, Omnia's request to dismiss this case *with prejudice* should be denied. (Mot., ECF No. 16-1, 21). It is evident that Omnia has engaged in wrongful conduct that has caused, and will continue to cause, Alliant significant harm. Dismissal without prejudice, so that Alliant may cure any perceived deficiencies in the Amended Complaint in a new action, would be the appropriate remedy under these circumstances. *See, e.g., Brown v. Matauszak*, 415 F. App'x 608, 614–16 (6th Cir. 2011) ("When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend."); *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 645 (6th Cir. 2003) (finding that a trial court abused its discretion in dismissing a complaint with prejudice, as "federal courts must be liberal in allowing parties to amend their complaints"); *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) ("where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation omitted). Accordingly, while Alliant respectfully submits the Court should deny Omnia's Motion in full for the reasons herein, if any of Alliant's claims are dismissed, dismissal without prejudice and with leave to amend is warranted.

Respectfully submitted,

/s/ Grahmn N. Morgan
Grahmn N. Morgan
Seth T. Church
Lexie J. Elder
DINSMORE & SHOHL LLP
100 W. Main Street, Suite 900
Lexington, Kentucky 40507
Phone: (859) 425-1000
Fax: (859) 425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
lexie.elder@dinsmore.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that, on March 26, 2025, the foregoing was electronically filed with the Court's e-filing system, which will send notification to all counsel of record.

/s/ Grahmn N. Morgan
*Counsel for Plaintiff*