IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:25-CV-00006

ALLIANT PURCHASING, LLC                                             PLAINTIFF

vs.

OMNIA PARTNERS, LLC and                                          DEFENDANTS
PREMIER, INC.

**RESPONSE IN OPPOSITION TO DEFENDANT,
PREMIER, INC.'S, MOTION TO DISMISS**

Plaintiff, Alliant Purchasing, LLC ("Alliant"), submits its response in opposition to

Defendant, Premier, Inc.'s ("Premier") Motion to Dismiss Alliant's Amended Complaint (the

"Motion").

**INTRODUCTION**

This case involves concerted, deceitful, and unlawful efforts by Premier and Omnia

Partners, LLC ("Omnia") to deprive Alliant of its rights and to interfere with Alliant's valuable

business relationships. Premier and Omnia are group purchasing organizations or "GPOs." In

short, a GPO leverages the collective buying power of its members to negotiate better prices or

discounts with suppliers, offering cost savings, access to a network of approved suppliers, and

streamlined processes for contract management. As relevant to this dispute, Premier operates a

GPO Program that included both healthcare and non-healthcare entities and lines of business (the

"Premier Program"). Alliant joined that program in 2015 through an agreement (the "Premier LP

Agreement") with Premier's subsidiary, Premier Healthcare Alliance LP ("Premier LP"). (Am.

Compl., ECF No. 6, ¶ 12). Under the Premier LP Agreement, Alliant became a member of the

Premier Program and was authorized to extend membership to other entities—known as "Member

Facilities"—as their "Sponsor." (*Id.* at ¶¶ 12–15). As a Sponsor, Alliant brings Member Facilities

into the Premier Program, manages their purchasing activities, and, in return, receives a portion of the administrative fees collected from the Member Facilities' purchases. (*Id.* at ¶¶ 16–18). Alliant has served as a Sponsor without incident for more than 31,000 healthcare and non-healthcare Member Facilities in the last decade, enriching Premier and its affiliates.

However, Premier and Omnia subsequently concocted a scheme to enrich themselves at the cost of Alliant by entering into a series of improper secret side agreements that have allegedly removed the ability of non-healthcare Member Facilities to have any say in who sponsors them, while apparently unilaterally crowning Omnia as their sole Sponsor. In short, Premier created a new entity, Non-Healthcare Holdings, LLC ("NHH"), and "contributed" Premier's non-healthcare contracts to it. Omnia then purchased NHH. Omnia has since used that position, with the cover of Premier's interpretation of its Recruitment and Retention Policy (the "R&R Policy"), to block transfers of Member Facilities—including the transfer of Metz Culinary Management, LLC ("Metz")—to Alliant. Those actions led Alliant to file this litigation.

In its motion to dismiss, Premier asserts that Alliant's Amended Complaint fails to state claims for which relief can be granted, and alternatively argues that a blanket dismissal is proper because there is a pending arbitration between Alliant and Defendants' subsidiaries, Premier LP and NHH. Both arguments fail for the reasons herein.

First, Premier's argument that the Amended Complaint fails to state claims for relief rests on allegations that Alliant cannot "prove" its claims and Premier's one-sided, self-serving, and unsupported recitation of disputed facts that Premier urges the Court to adopt as more believable than Alliant's. Premier's arguments ignore the deferential standard that applies at this stage of proceedings, which requires that the allegations in the Amended Complaint be accepted as true and all inferences be reasonably drawn in Alliant's favor. When viewed under this proper

2

standard—rather than the higher and incorrect standard Premier attempts to impose— it is evident that each of Alliant's claims are adequately pled, and that Premier's motion to dismiss on this basis must be denied.

Second, Premier's request to dismiss this action outright because Alliant is involved in an arbitration with Premier's subsidiary, Premier LP, is utterly meritless. Premier is not a party to that arbitration and refused Alliant's invitation to participate in it. Premier's attempt to now paradoxically use that proceeding as a shield from litigation is contrary to fundamental principles of fairness and justice and finds no support in established precedent. Premier's motion to dismiss on this ground must be denied.

In any event, Premier's motion seeks dismissal with prejudice, which is simply wrong. If any portion of Premier's motion is granted, Alliant seeks leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

## BACKGROUND

Alliant serves as a Sponsor for healthcare and non-healthcare Member Facilities in the Premier Program, which Premier administers and operates. From 2015 up to 2024, Alliant did so under the Premier LP Agreement. (Am. Compl., ECF No. 6, ¶ 12). In 2016, Premier created an R&R Policy to govern the conduct of Sponsors in the Premier Program. (*Id.* ¶ 20). The R&R Policy provides the methods by which Sponsors can grow their business and compete for clients. (*Id.*). Premier is responsible for administering the R&R Policy. (*Id.* ¶ 44, 72). Premier is also responsible for managing its "roster", which lists all Premier Program members and their Sponsors. (*Id.* ¶ 26).

In May 2023, Premier created NHH and "contributed" Premier LP's non-healthcare contracts, sponsors, and members (collectively, the "non-healthcare accounts") to NHH. (*Id.* ¶¶ 37–38). Shortly thereafter, Omnia acquired NHH from Premier in a $680 million publicly

3

disclosed transaction, which provided the non-healthcare business would continue to be operated substantially the same manner as it was prior. (*Id.* ¶¶ 39, 43–45). At that time, Omnia became the primary GPO for the non-healthcare accounts. (*Id.* ¶ 41). However, the non-healthcare accounts continued to participate in, and purchase from, the Premier Program, and (consistent with the publicly disclosed transaction) Omnia promised the acquired non-healthcare accounts that business would continue as usual: the non-healthcare accounts would continue to participate in the Premier Program, the process of sponsoring Member Facilities would stay the same, and the R&R Policy would remain in effect and managed by Premier. (*Id.* ¶¶ 43–45).

Some months later, Omnia demanded that Alliant execute a new contract with NHH (the "NHH Agreement"). (*Id.* ¶ 46). Omnia's CEO assured Alliant that it would be able to grow its non-healthcare business in the Premier Program under the NHH Agreement, and that, if Alliant did not sign the NHH Agreement, it would lose access to the non-healthcare portion of the Premier Program. (*Id.* ¶ 47). In reliance on those material representations, in January 2024, Alliant entered into the NHH Agreement, which was in all material respects the same as the Premier LP Agreement. (*Id.* ¶ 48).

In December 2023, Vantage Purchasing Partners LLC ("Vantage"), a Premier Program Sponsor, was acquired by another Sponsor, Pandion Optimization Alliance ("Pandion"). (*Id.* ¶ 58). Prior to this transaction, Vantage was the Sponsor for Metz. Pursuant to Premier's R&R Policy, Metz could change its Sponsor within six (6) months from a "change of control" of its current Sponsor, meaning a situation where "all or substantially all of the assets of the sponsor are sold, transferred, or assigned to an unrelated third party[.]" (*Id.* ¶¶ 29–30). When Pandion acquired Vantage, Metz elected to avail itself of that provision and issued a request for proposals and open solicitation for a new Sponsor. (*Id.* ¶ 61). Alliant, Pandion, and other Premier Program Sponsors

responded, seeking to serve as Metz's Sponsor. (*Id.* ¶ 63). Metz ultimately selected Alliant as its new Sponsor. (*Id.* ¶¶ 64–65). Metz and Alliant entered into a valid business arrangement, agreeing that Alliant would sponsor Metz's healthcare and non-healthcare accounts. (*Id.* ¶¶ 65–67). Metz and Alliant executed a sponsorship transfer form, which Metz submitted to Premier in March 2024. (*Id.* ¶ 66). Per the R&R Policy, Metz's accounts should have automatically transferred to Alliant thirty days later, concluding this matter. (*Id.* ¶¶ 32, 68).

This otherwise standard and routine transaction, however, was abruptly and wrongfully halted only days later when Omnia contacted Alliant and Metz and stated that it would not allow Alliant to serve as Metz's Sponsor. (*Id.* ¶¶ 69–71). Omnia asserted that the R&R Policy did not even apply to non-healthcare accounts, that the transfer was improper, and that Metz would remain with its then-current Sponsor, Pandion. (*Id.*). Omnia refused to explain the basis of its interference or interpretation of the R&R Policy. (*Id.*). Consistent with the R&R Policy, Alliant requested Premier's intervention in interpreting and enforcing the R&R Policy. (*Id.* ¶ 72).

In response, Premier confirmed that the sponsorship transfer methods under the R&R Policy *did* apply to non-healthcare accounts. (*Id.* ¶ 79). However, Premier claimed, apparently unbeknownst to everyone else involved, that *Omnia* was Metz's non-healthcare Sponsor as a result of hidden side dealings between Premier and Omnia in relation to the NHH deal. (*Id.* ¶¶ 73–76). Thus, according to Premier, Metz could not change Sponsors for its non-healthcare accounts because there was no "change of control," as Omnia had not undergone one, even if Vantage or Pandion had. (*Id.*). Premier also suggested that *Alliant* was no longer a Sponsor of any non-healthcare accounts either, and that, under some undisclosed and illicit contract between Premier and Omnia, Premier had crowned Omnia as the exclusive Sponsor of each and every non-healthcare account in the Premier Program worldwide. (*Id.* ¶ 76).

Premier's explanation was non-sensical. Alliant was still formally recognized as a Sponsor on Premier's official membership roster as it had been for the last decade. (*Id.* at ¶¶ 103, 107). And on that official membership roster, Omnia was not identified as a Sponsor for Metz—*Pandion* was. (*Id.*). Again, Premier manages the roster and requires all Sponsors to use the roster as a guide when recruiting new business. (*Id.* ¶ 26). Moreover, Omnia had purported to be the primary GPO of the non-healthcare accounts, not the exclusive *Sponsor* of them. (*Id.* ¶¶ 77, 102). Neither Premier nor Omnia had ever indicated that Alliant was no longer a Sponsor, and Alliant certainly never agreed to relinquish its right to sponsor Member facilities in the Premier Program. (*Id.* ¶¶ 102, 107). Premier's statements also directly conflicted with Omnia's claim that the R&R Policy was per se inapplicable to non-healthcare accounts and that *Pandion* would accordingly remain Metz's Sponsor. (*Id.* ¶¶ 78–79, 92). Given these inconsistencies, Alliant sought further clarification. (*Id.* ¶ 82).

When Alliant representatives spoke to Premier representatives in person, Premier shifted its original position and affirmatively agreed that the R&R Policy permitted Alliant's sponsorship of Metz's non-healthcare accounts and that Metz's non-healthcare accounts would transfer to Alliant. (*Id.* ¶¶ 83–86). But when Alliant attempted to confirm Premier's verbal acknowledgements in writing, Premier reverted back to its claim that there was no "change of control" because, according to Premier, Omnia was Metz's Sponsor and had been since September 2023. (*Id.* ¶ 98).

In Alliant's ongoing conversations with Omnia, Omnia continued to insist the transfer was improper because the R&R Policy was wholly inapplicable to non-healthcare accounts and Pandion was Metz's rightful Sponsor. (*Id.* ¶¶ 87, 92–93). Simultaneously, however, Omnia would point to Premier's written statements—which, again, were entirely inconsistent with Omnia's

6

position—to contend that the issue had been settled and was closed for further discussion. (*Id.* ¶ 96). Despite Omnia's claim that it was not Metz's Sponsor, and Premier's power and obligation to transfer Metz's accounts under the R&R Policy, Premier refused to do so. Soon, it became evident to Alliant that Omnia and Premier were not interested in interpreting and applying the R&R Policy in good faith; rather, they were intent on manufacturing ways to inequitably and incorrectly apply it to Alliant. (*Id.* ¶¶ 106–108). Accordingly, Alliant commenced this action against Premier and Omnia, seeking declaratory relief and damages for Defendants' various breaches and concerted efforts to tortiously interfere with Alliant's relationship with Metz.

## **ARGUMENT**

### I.      **Alliant's Amended Complaint states claims upon which relief can be granted.**

Under the liberal pleading standards in the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). And, when the complaint contains well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, all inferences and ambiguities must be resolved in plaintiff's favor at this stage. *Childress v. Bank of Am., N.A.,* No. 18-154-DLB-CJS, 2019 U.S. Dist. LEXIS 134410, at *25 (E.D. Ky. Aug. 9, 2019).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* The factual allegations simply must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563.

Considering all of Alliant's factual allegations as true, the Amended Complaint states claims that plausibly give rise to an entitlement of relief. Premier's motion must therefore be denied.

### A.  Alliant has stated a claim for breach of contract.

In its motion, Premier seeks dismissal of Alliant's claim for breach of contract on the basis that the R&R Policy is not a contract but is only "relevant" and binding because it is incorporated into Alliant's Agreements with Premier LP and NHH.  (Mot., ECF No. 24, at 13-14). Alternatively, Premier argues that even if the R&R Policy is a contract, Premier did not breach the R&R Policy. (*Id.*). Premier's arguments are contrary to Kentucky law and ignore the well pleaded allegations in the Amended Complaint giving rise to this claim.

First, Premier is correct that R&R Policy is expressly incorporated into the Premier LP Agreement and NHH Agreement. Pursuant to those agreements, which Premier is not a party to, Alliant, Premier LP, and NHH are contractually bound to follow and comply with Premier's R&R Policy. However, this fact does not negate the possibility that the R&R Policy is binding on Premier as well as a contract implied in fact, which may arise from "the circumstances, the conduct, acts, or relation of the parties, rather than from their spoken words." *Univ. of Ky. v. Regard*, 670 S.W.3d 903, 919 (Ky. 2023). The only difference between an implied and express

8

contract is the "mode of proof." *Id.* (citing *Kellum v. Browning's Adm'r*, 231 Ky. 308, 21 S.W.2d 459, 465 (Ky. 1929)).

Policies, procedures, and regulations frequently give rise to a contract implied in fact. *Jones-Turner v. Yellow Enter. Sys., LLC,* No. 3:07-CV-00218-CRS, 2014 U.S. Dist. LEXIS 43942, at *5–7 (W.D. Ky. Mar. 31, 2014) (personnel policy was implied contract); *Stathis v. Univ. of Ky.,* No. 2004-CA-000556-MR, 2005 Ky. App. Unpub. LEXIS 886, at *26 (Ky. App. May 13, 2005) (organization's bulletins, circulars, and regulations created implied contract; breach was a question of fact for jury). Under these circumstances, the question of whether a policy creates an implied contract is a factual one. *Beard v. McCammish Mfg. Co.,* No. 1:03CV-107-R, 2003 U.S. Dist. LEXIS 29014, at *5 (W.D. Ky. Dec. 9, 2003) (denying motion to dismiss because plaintiff was entitled to submit proof on whether policies and procedures created an implied contract).

When taken as true, the Amended Complaint plausibly establishes that the R&R Policy was binding on Premier as a contract implied in fact. In particular, Alliant has alleged Premier implemented the R&R Policy, which governs the participation of members and Sponsors in *Premier's* group purchasing program—the Premier Program. (Am. Compl., ECF No. 6, ¶ 20). Alliant has alleged Premier's authority and obligation to administer the R&R Policy, which Premier concedes in its motion. (*Id.* ¶ 72; Mot., ECF No. 24, at 11). Alliant has also alleged that Premier maintains the Premier Program's roster, which Sponsors must review under the R&R Policy before recruiting new business, that sponsorship transfer requests are submitted directly to Premier, and that Premier purported to rely upon and cite to the R&R Policy when "rationalizing" the conduct of Premier and Omnia throughout this dispute. (Am. Compl., ECF No. 6, ¶¶ 22, 26, 75, 84, 96, 103). Moreover, the R&R Policy ascribes *numerous* additional rights and obligations to Premier. (*Id.* at Ex. 1, R&R Policy). In sum, Premier's argument that it is not bound by the R&R

Policy that it implemented, purports to control, and has numerous rights, obligations, and duties under, is wholly illogical. Even Omnia acknowledges Premier's duty to manage and administer the R&R Policy. (ECF No. 31). Accordingly, an implied contract to abide by the terms of the R&R Policy can be reasonably inferred from Premier's conduct as alleged in the Amended Complaint, making dismissal improper at this stage. *Beard,* 2003 U.S. Dist. LEXIS 29014, at \*5.

Second, Premier's defense that it did not breach the R&R Policy because its "interpretation comports with the ordinary meaning of the R&R Policy" is disputed and not a basis for dismissal. *Walls v. JPMorgan Chase Bank, N.A.,* No. 3:11-CV-673-H, 2012 U.S. Dist. LEXIS 105756, at \*11-12 (W.D. Ky. July 30, 2012) (dismissal based on disputed interpretation of contract improper). Notably, Premier's purported interpretation rests entirely on its claim that Omnia is Metz's Sponsor, and there are *numerous* allegations in the Amended Complaint that contradict this assertion. (Am. Compl., ECF No. 6, ¶¶ 76–82, 97–108). Moreover, Alliant has sufficiently asserted that Premier breached the R&R Policy when it misrepresented its terms and application, failed to recognize and allow Alliant's sponsorship of Metz following Metz's submission of the transfer request form to Premier, and allowed Omnia (who, under Premier's version of events, is Alliant's *competitor*) to step into Premier's shoes to purportedly block Alliant's business with Metz. (*Id.* ¶¶ 32, 68, 72–77, 116). Alliant has expressly alleged that Premier did *not* "comport" with the terms of the R&R Policy, but rather intentionally misrepresented the R&R Policy in an attempt to coordinate and rationalize the wrongful blockage of Alliant's business relationship with Metz. (*Id.* ¶¶ 104–108). These allegations, which must be taken as true at this stage, state a claim for breach of contract against Premier. Premier's motion to dismiss this claim should be denied.

10

### B. Alliant has stated a claim for tortious interference.

The Amended Complaint sufficiently states a claim for tortious interference against Premier. Under Kentucky law, a claim for tortious interference requires the following six elements:

> (1) the existence of a valid business relationship or expectancy; (2) defendant was aware of the relationship or expectancy; (3) defendant intentionally interfered; (4) defendant's motive in doing so was improper; (5) causation; and (6) special damages.

*PBI Bank, Inc. v. Signature Point Condos. LLC*, 535 S.W.3d 700, 716 (Ky. App. 2016).

In its motion, Premier argues that Alliant's claim fails because, according to Premier, Alliant did not have a valid business relationship with Metz. (Mot., ECF No. 24, at 15–16). Alternatively, Premier argues it did not intentionally interfere with Alliant's relationship with Metz, act with an improper motive, or cause Alliant to suffer any special damages. (*Id.* at 16–17). Premier's arguments improperly rest on its own self-serving version of the events in question, as opposed to the facts alleged in the Amended Complaint which must be taken as true at this stage.

For example, Premier claims there was no valid business relationship between Alliant and Metz because, according to Premier, Omnia, or NHH[1], is Metz's non-healthcare Sponsor. (*Id.* at 15-17). Thus, Premier contends that Metz could not invoke the R&R Policy's "change of control" exception, and, as a result, a "valid business relationship" between Alliant and Metz did not exist. (*Id.*).

However, Alliant has already alleged that Premier's position regarding Metz's sponsorship is a complete fabrication that Premier manufactured in hindsight to justify its improper interference. (Am. Compl., ECF No. 6, ¶¶ 106–107, 121). Notably, as asserted in the Amended

---

[1] As alleged in the Amended Complaint, Premier informed Alliant throughout this dispute that *Omnia* was Metz's Sponsor- only now, in its Motion to Dismiss, does it allege NHH is Metz's Sponsor.

Complaint, Metz believes Pandion to be its Sponsor, Pandion believes itself to be Metz's Sponsor, Omnia/NHH have informed Alliant on numerous occasions that Pandion is Metz's Sponsor, and Premier's own membership roster named Pandion as Metz's Sponsor. (*Id.* ¶¶ 77–82, 102–103). These allegations are in addition to many others that demonstrate Alliant's valid business relationship with Metz, all of which must be taken as true during this stage.[2]

Premier's alternative arguments are likewise based on Premier's self-serving narrative as opposed to the facts as alleged in the Amended Complaint. For example, while Premier attempts to portray itself as an innocent party who was merely trying to help at Alliant's request, the Amended Complaint tells a different story, alleging that Premier intentionally and improperly misrepresented the R&R Policy and the availability of the transfer options thereunder, misrepresented and concealed Metz's true Sponsor, and blocked Alliant's sponsorship of Metz's non-healthcare accounts without justification. (*Id.* ¶¶ 106–108, 121). Again, these allegations must be taken as true at this stage.

Moreover, a factual inquiry into Premier's motives is premature and improper at this stage because "[q]uestions like 'good faith,' 'improper purpose,' and 'motive' are fact questions properly decided by a jury." *Prime Contracting, Inc. v. Wal-Mart Stores, Inc.,* No. 06-383-JBC, 2008 U.S. Dist. LEXIS 56449, at *19 (E.D. Ky. July 22, 2008) (quoting *Uppal v. Gateway Regional Health Sys., Inc.,* 2005 WL 2323174 (Ky. App. Sept. 23, 2005)). Federal Rule of Civil Procedure 9(b) confirms "malice, intent, knowledge, and other conditions of a person's mind *may be alleged generally*." Notwithstanding, Alliant has alleged that Premier's actions were intentional malicious, wrongful, and without justification, which is sufficient to satisfy the "improper motive"

---

[2] For example, Alliant has also alleged Metz selected Alliant as its Sponsor, that Alliant and Metz entered into a business relationship whereby Alliant would serve as Metz's Sponsor, and that Metz submitted a sponsorship request form to effectuate this business relationship. (*Id.* ¶¶ 61–68).

12

element at this stage. [3]   (Am. Compl., ECF No. 6, ¶ 121); *Greencity Demo, LLC v. Wood Env't & Infrastructure Sols., Inc.,* No. 3:19-CV-146-RGJ, 2021 U.S. Dist. LEXIS 14698, at *13 (W.D. Ky. Jan. 26, 2021) (allegations that defendant's conduct was intentional, unethical and malicious satisfied "improper motive" element and dismissal was improper); *Mohr Partners, Inc. v. CBRE Grp., Inc.,* No. 3:19-CV-677-RGJ, 2020 U.S. Dist. LEXIS 212013, at *16 (W.D. Ky. Nov. 12, 2020).

Causation is also clearly alleged in the Amended Complaint. Premier's argument otherwise is based solely on its self-serving claim that this outcome was "dictated" by the R&R Policy, which ignores that the R&R Policy's correct interpretation is heavily disputed in this case, and that Premier's interpretation rests on contested facts, i.e., Metz's actual Sponsor. The Amended Complaint alleges that Premier's interference ultimately caused Alliant to lose its valuable relationship with Metz, and that, absent this interference, Metz's business would have transferred to Alliant following the submission of the sponsorship transfer request form. (Am. Compl., ECF No. 6, ¶¶ 67–68, 103, 122–123). These allegations establish causation.

Finally, Premier's claim that Alliant has no "special damages" is false. The Amended Complaint clearly alleges that Alliant's business relationship with Metz has been destroyed, which satisfies this prong. *Ceres Protein, LLC v. Thompson Mech. & Design,* No. 3:14-CV-00491-TBR-LLK, 2016 U.S. Dist. LEXIS 143765, at *33 (W.D. Ky. Oct. 17, 2016) (allegation that interference which hindered the ability to do business with prospective client, and that "economic harm

---

[3] The Amended Complaint also alleges that Premier's interference was advanced through intentional misrepresentations the R&R Policy and/or Metz's Sponsor, and that Premier's interference resulted in unreasonable restraints on trade and competition, which are further evidence of its improper motive. (Am. Compl., ECF No. 6, ¶ 121).

13

occasioned by the delay of loss or delay of that deal" was suffered satisfies "the special damages" requirement).

In sum, Premier's arguments fail. The Amended Complaint contains detailed allegations supporting each and every element of Alliant's tortious interference claim. Premier's motion to dismiss this count must be denied.

### C. Alliant has stated a claim for breach of fiduciary duty and aiding and abetting.

Alliant has stated claims against Defendants for breach of fiduciary duty, and for aiding and abetting each other in those efforts. (Am. Compl., ECF No. 6, ¶¶ 124–35). Premier challenges these counts on the purported grounds that there was no fiduciary relationship between Defendants and Alliant. (Mot., ECF No. 24, at 17–20). Alternatively, assuming a fiduciary relationship does exist, Premier argues that the alleged conduct does not constitute a breach of duties owed to Alliant. (*Id.*).

Premier's first argument is based solely on the existence of Alliant's agreement with Premier's subsidiary, Premier LP. Premier argues that Delaware law (which is the choice of law in the Premier LP Agreement) prohibits breach of fiduciary duty claims that arise from breach of contract. (*Id.* at 17–18). Premier's argument is entirely off-base. Premier LP is not a party to this case and Premier is not a party to the Premier LP Agreement, which is, in fact, entirely irrelevant to this cause of action. There is no claim for breach of the Premier LP Agreement in this case, and it is thus entirely illogical how Alliant's breach of fiduciary duty claim against Premier could be barred on this basis.

Rather, under Kentucky law, fiduciary relationships may arise informally from the conduct or undertaking of the purported fiduciary. *Flegles, Inc. v. TruServ Corp.,* 289 S.W.3d 544, 552

14

(Ky. 2009). In *Security Trust Co. v. Wilson*, 210 S.W.2d 336 (Ky. 1948), for example, the Kentucky Supreme Court stated with approval the following definition of a fiduciary relationship:

> The [fiduciary relationship] may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.

*Id.* at 338 (citation omitted). One circumstance in which a fiduciary relationship can arise is in the context of agency. *Calloway Cleaning & Restoration, Inc. v. McFarland (In re McFarland),* Nos. 16-21587, 17-2004, 2018 Bankr. LEXIS 451, at *17 (Bankr. E.D. Ky. Feb. 20, 2018) (observing agent owes fiduciary duty to principal); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 818 (E.D. Ky. 2013). Ultimately, the determination on whether a fiduciary relationship exists is "fact-specific to the relationship in question." *Scatuorchio*, 941 F. Supp. 2d at 818.

Alliant has alleged the existence of a fiduciary relationship between Defendants and Alliant—not due to some underlying agreement—but because of their *conduct, words, and actions*. Among other things, Alliant has asserted that Premier and Omnia are GPOs that service Alliant's healthcare and non-healthcare accounts and business. (Am. Compl., ECF No. 6, ¶¶ 7–8, 12–13, 41–42). Alliant has explained that GPOs act in furtherance of their members' interests by negotiating favorable contracts with vendors and by purchasing goods and services at discounted rates on behalf of their members, which Premier concedes in its brief. (*Id.* ¶ 7; Mot., ECF No. 24, at 5). In this capacity, Alliant has alleged Premier and Omnia act as purchasing agents and in the best interests for their members and Sponsors, including Alliant. (Am. Compl., ECF No. 6, ¶¶ 13, 42, 123). When taken as true, those facts plausibly give rise to a fiduciary relationship.

Premier's Group Purchasing Code of Conduct, available to all members and Sponsors, solidifies its role as a fiduciary and the duties it owes to Alliant. Those policies confirm "[e]ach

15

Premier GPO [defined as Premier LP and its "affiliates"] *acts first and foremost as a representative* of its [m]ember organizations", and expressly provides that Premier is the "purchasing *agent*" for its members. (Group Purchasing Code of Conduct, Ex. A, 1, 7). Premier further acknowledges its duty to act "ethically, fairly and accountably" towards members. (*Id.* at intro). Similarly, in Premier's Business Code of Conduct, Premier agrees to abide by principles of fair competition, promising that "Premier will not make illegal or inappropriate agreements with competitors concerning [Premier] members . . . or otherwise seek to limit competition." (Business Code of Conduct, Ex. B, 16). These policies, which exist outside of the Premier LP Agreement, confirm what is alleged in the Amended Complaint: that Premier portrayed it would act in good faith towards Alliant and with due regard for Alliant's interests. As a result, Premier gained Alliant's trust and confidence—the core of a fiduciary relationship.

Premier's alternative argument, that Premier did not breach the fiduciary duties owed to Alliant, also rests on an agreement that Premier is not a party to—the NHH Agreement. Premier argues that it could not have breached any fiduciary duties owed to Alliant because Alliant "knowingly entered into" the NHH Agreement, which "disqualified" Alliant as a Sponsor. In essence, Premier asks this Court to dismiss this count because, based on Premier's unilateral interpretation of cherry-picked language in the NHH Agreement, Alliant wholesale waived its right to pursue claims against Premier for fiduciary breaches. To be clear, Alliant completely disagrees with Premier's interpretation of the NHH Agreement and denies Premier's contention that Alliant relinquished its sponsorships rights thereunder. That said, Premier's arguments are improper at this stage, and are not based on the allegations offered in the Amended Complaint to support this claim. Rather, they are based contested facts that are not part of this claim, which Premier only raises here in an improper attempt to muddy the waters.

All that is required at this stage is that the Amended Complaint alleges facts from which it can be plausibly inferred that Premier breached the fiduciary duties owed to Alliant. Here, the Amended Complaint surpasses that requirement, alleging that Premier breached fiduciary duties when it, among other things, conveyed Alliant's sponsorship rights to Omnia (or NHH), concealed that conveyance, and then allowed Omnia i.e., Alliant's *competitor*, to directly participate in the sponsorship transfer process to block Alliant's business relationship with Metz, all to the detriment of Alliant. (Am. Compl., ECF No. 6, ¶ 127); *HDR Farms Inc. Liquidating Tr. v. Applied Botanics LLC (In re HDR Farms Inc.),* Nos. 20-50888, 21-5166, 2021 Bankr. LEXIS 3556, at *5–6 (Bankr. E.D. Ky. Dec. 30, 2021). Premier's motion to dismiss this count must be denied.

Finally, Premier's argument that it did not aid and abet Omnia in Omnia's breaches of fiduciary duties owed to Alliant likewise fails when the allegations in the Amended Complaint are properly taken as true. The fiduciary duties owed by Omnia to Alliant are well pleaded in Alliant's Amended Complaint and are addressed in detail in Alliant's response to Omnia's motion to dismiss. (Resp. to Omnia Mot., ECF No. 31, at 13–15). The Amended Complaint adequately alleges that Premier encouraged and provided Omnia with substantial assistance in breaching those duties, and acted in coordination with Omnia to destroy Alliant's rights. (Am. Compl., ECF No. 6, ¶¶ 106, 108, 130–135). When all reasonable inferences are drawn in Alliant's favor, the Amended Complaint states a claim against Premier for aiding and abetting Omnia's breach of fiduciary duties under Kentucky law. *Brunswick TKTKonnect, LLC v. Kavanaugh,* 661 F. Supp. 3d 698, 711 (W.D. Ky. 2023). Accordingly, Premier's motion to dismiss this count must be denied.

### D.  Alliant has stated a claim for civil conspiracy.

The Amended Complaint states a claim for Civil Conspiracy, satisfying all elements required under Kentucky law:

17

> (1) an agreement or combination expectancy ( 2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal.

*Greencity,* 2021 U.S. Dist. LEXIS 14698, at *14–15 (citing *Brown v. Student Loan Xpress, Inc.*, No. 5:11-CV-00090-TBR, 2012 U.S. Dist. LEXIS 40878, at *9 (W.D. Ky. Mar. 26, 2012)).

In its motion, Premier improperly argues for dismissal of this claim because, according to Premier, "Alliant cannot *prove* a conspiracy." (Mot., ECF No. 24, at 20). But Alliant is not required to *prove* anything at this stage; it is merely required to allege sufficient factual matter that, when accepted as true, states a claim for relief that is plausible on its face. *Blue Leather, LLC v. Markowicz*, No. 3:07-CV-458-S, 2008 U.S. Dist. LEXIS 55445, at *3 (W.D. Ky. July 18, 2008) ("[the defendant] appears to expect [the plaintiff] prove its claims from the complaint. Such is not required under Rule 8(a)"). The Amended Complaint satisfies the relevant standard.

Indeed, Alliant has pleaded Defendants' unlawful conspiracy in great detail, alleging, for example, that Defendants acted in a coordinated effort to, among other things, intentionally misrepresent the R&R Policy, conceal the nature of their relationships with others in this dispute, and violate the R&R Policy and Alliant's rights thereunder. (Am. Compl., ECF No. 6, ¶¶ 106–107, 137). Alliant has also expressly alleged that, through these means and others, Defendants engaged in a concerted effort to interfere with Alliant's valid business relationship with Metz. (*Id.*). These allegations sufficiently state a claim for civil conspiracy. *See Brown,* 2012 U.S. Dist. LEXIS 40878, at *27 (discovery on civil conspiracy claim was necessary to determine if defendants misrepresented terms of agreement in furtherance of conspiracy); *see also Mitchco Int'l v. Commonwealth,* No. 2020-CA-1250-MR, 2021 Ky. App. Unpub. LEXIS 589, at *15 (Ky. App. Oct. 8, 2021) (dismissal of civil conspiracy claim reversible error; plaintiff sufficiently alleged defendants acted together to breach contracts and interfere with plaintiff's business).

Moreover, Premier's argument that a claim for civil conspiracy cannot arise from a breach of contract claim rests on Delaware and Ohio case law, which is wholly inapplicable here. Kentucky does not follow this rule. *Thermothrift Indus., Inc. v. Mono-Therm Insulation Sys., Inc.*, 450 F. Supp. 398, 404 (W.D. Ky. 1978) (civil conspiracy involved joint effort to breach agreement); *Mitchco,* LEXIS 589, at *15 (dismissal of civil conspiracy claim reversible error; plaintiff sufficiently alleged defendants acted together to breach contracts and interfere with plaintiff's business).

In any event, the primary basis of this claim is Defendants' tortious interference with Alliant and Metz's business relationship, which has been sufficiently pleaded for the reasons explained above. (Am. Compl., ECF No. 6,  ¶¶ 108, 137–139). Because Alliant has stated a claim for tortious interference, the civil conspiracy claim cannot be dismissed for lacking an "underlying tort." *See Greencity Demo,* 2021 U.S. Dist. LEXIS 14698, at *15 (denying motion to dismiss claim for civil conspiracy because plaintiff had stated a claim for the underlying tort of tortious interference). Premier's motion to dismiss this count must be denied.

### E.    Alliant has stated a claim under KRS 365.050.

In its motion, Premier seeks dismissal of Alliant's claim under a claim under KRS 365.050 on several grounds. (Mot., ECF No. 24, at 20–21). KRS 365.050 provides, in full:

> The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment or allowance tends to destroy competition, is an unfair trade practice, and no person shall resort to such trade practice.

KRS 365.050.

First, Premier argues this claim fails because Omnia's purchase of NHH was publicly disclosed[4], and thus alleges Alliant cannot satisfy the "secret payment" requirement. (Mot., ECF No. 24, at 20-21). However, the showing of a "secret payment" is merely one of several ways in which this statute can be violated.[5] Under KRS 365.050, this claim may also be satisfied from a "secret allowance" or "secret[] extension[]… of special services or privileges", which are offered to some but not all purchasers. Here, Alliant has alleged this statute was violated because Premier secretly extended Omnia (or NHH) special services or privileges that were not offered to other purchases in the Premier Program, namely, the purported "exclusive right" to sponsor non-healthcare accounts.[6] (Am. Compl., ECF No. 6, ¶¶ 77, 104, 127–28, 121, 146, 147). *Mitchco,* LEXIS 589, at *15 (reversible error to dismiss claim under this statute when plaintiff alleged defendants had eliminated plaintiff's ability to compete for certain contracts). Thus, the failure to allege a "secret payment" does not invalidate this claim.[7]

---

[4] Premier's reliance on the "publicly disclosed" NHH transaction is a distraction. As stated in the Amended Complaint, Premier's purported conveyance of exclusive sponsorship rights to Omnia (or NHH) occurred in side-deals which were hidden from Alliant, other Premier Program members, and the public at large. In fact, the publicly disclosed transaction provides that the "non-healthcare business will be operated substantially the same manner as operated by the Premier Parties," which is quite different from Premier's current contention that the rights of prior Sponsors were eliminated thereunder.

[5] Premier's reliance on *Louisa Coca-Cola Bottling Co. v. Pepsi-Cola Metro. Bottling Co., Inc.,* 94 F.Supp.2d 804, 812 (E.D. Ky. 1999), as requiring a "secret payment" for this claim is misplaced. In *Louisa,* the plaintiff was required to demonstrate a "secret payment" because that was the specific theory that the plaintiff had advanced in its complaint. *Louisa* did not hold a "secret payment" was the exclusive means by which this statute could be triggered, as such a holding would clearly contradict the plain language of the statute.

[6] Alternatively, if Pandion is Metz's Sponsor, Defendants have concealed a special privilege or benefit held by Pandion, allowing it to circumvent the terms of R&R Policy, a privilege that has not been extended to other Premier Program purchasers. (Am. Compl., ECF No. 6, ¶¶ 92, 98, 99, 106, 107, 146, 147).

[7] Premier's argument that the NHH Agreement somehow also destroys this claim is a deflection. As already addressed in the sections above, Premier's contention that Alliant voluntarily signed over its sponsorship rights in the NHH Agreement is, again, based on Premier's selective, out-of-context, and self-serving reading of the NHH Agreement (which Premier is not even a party to),

Premier alternatively argues this claim should be dismissed because Alliant remains an "aggregator" in the Premier Program, and thus, according to Premier, competition has not been harmed. However, the facts alleged in the Amended Complaint, when taken as true, demonstrate that Premier entirely foreclosed competition in a particular market segment, namely the "sponsorship" tier while unilaterally relegating its former Sponsors to a new position as an "aggregator" without any contractual authority to do so. This not only harms, but completely destroys, competition for entities like Alliant, who are now forbidden from competing with the "sole Sponsor" crowned by Premier under this unlawful exclusive dealing arrangement. The alleged conduct constitutes a violation of this statute. *Mitchco,* LEXIS 589, at \*15.

There is ample support for this claim throughout the Amended Complaint, which must be considered in its entirety and in the manner most beneficial to Alliant. *Cahoo v. SAS Analytics Inc.,* 912 F.3d 887, 895 n.3 (6th Cir. 2019). Premier's motion to dismiss this count must be denied.

### F.  Alliant's request for declaratory judgment is proper.

Premier argues that Alliant's request for declaratory judgment fails because Alliant has no "legal claims" in this case. (Mot., ECF No. 24, at 12–13). In other words, Premier's argument rests on the assumption that Alliant's other claims will all be dismissed. As demonstrated above, Alliant has stated claims for relief against Premier. Premier's argument for dismissal of this count is therefore improper.

Premier separately argues that this count fails in light of the ongoing arbitration. This argument is also meritless. The requested declaratory relief relates to the proper interpretation of the R&R Policy and Alliant's rights thereunder; not the underlying contracts with Defendants'

---

which Alliant disputes and is contradicted by other language in the NHH Agreement which *expressly describes Alliant as a sponsor.* In any event, this argument is irrelevant to this count and improper on a motion to dismiss.

subsidiaries. (Am. Comp., ECF No. 6, ¶¶ 111–113). The R&R Policy is Premier's policy, and Premier concedes its role and involvement in applying and interpreting the R&R Policy. (Mot., ECF No. 24, at 2–3). Thus, the requested declaratory relief involves a dispute between the parties in this case, does not involve the rights of absent parties, and is properly before this Court.

## II.    The separate arbitration is not a basis for dismissal.

Finally, Premier asserts that this case should be dismissed in its entirety because of the ongoing arbitration between Alliant and Defendants' subsidiaries—Premier LP and NHH. (Mot., ECF No. 24, at 22–24). Premier deceptively states that the Sixth Circuit favors this outcome, citing four cases in its brief. In each of those cases, however, the courts *compelled* arbitration between *the parties to the litigation* before dismissing the action. *Ozormoor v. T-Mobile USA, Inc.,* 354 F. App'x 972, 973 (6th Cir. 2009) (compelling arbitration because defendants and plaintiffs had entered into a binding arbitration agreement and dismissing case); *Mitchell v. Cambridge Franchise Holdings, LLC,* 433 F. Supp. 3d 1064, 1072 (W.D. Ky. 2020) (compelling arbitration between parties to lawsuit and dismissing); *Gesenhues v. Adecco United States,* Civil Action No. 3:19-CV-204-CHB, 2020 U.S. Dist. LEXIS 231291, at *10 (W.D. Ky. Dec. 9, 2020) (same); *Jones v. Good Shepherd Healthcare Sols., Inc.*, Civil Action No. 3:17-cv-411-DJH, 2019 U.S. Dist. LEXIS 11251, at *5 (W.D. Ky. Jan. 24, 2019) (same). That is not the case here.

The other cases cited in Premier's motion are likewise misleading. In those cases, litigation was *stayed*—not dismissed—pending the outcome of an ongoing arbitration with non-parties. While a discretionary stay is within the Court's power in certain circumstances, Premier has not sought a stay, much less articulated why one should be entered. The Sixth Circuit has warned "that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist.*

22

*Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

In sum, Premier essentially seeks complete immunity for its alleged wrongdoings, requesting that this case be dismissed in full in favor of an arbitration that it is not a party to and has no plans of participating in.[8] That is not the law. Alliant is entitled to pursue its distinct claims against Defendants and their subsidiaries, even if it must do so in separate forums.

**V.    Dismissal with prejudice is improper and Alliant should be granted leave to amend if any claims are dismissed.**

For the reasons herein, Alliant's Amended Complaint states detailed, plausible, and viable claims against Premier, particularly at this stage where all alleged facts are taken as true and all inferences and ambiguities must be resolved in Alliant's favor. Notwithstanding, in the event the Court believes Alliant has failed to state any one of its claims, Premier's request to dismiss this case *with prejudice* should be denied. (Mot., ECF No. 24). It is evident that Premier has engaged in wrongful conduct that has caused, and will continue to cause, Alliant significant harm. Dismissal without prejudice, so that Alliant may cure any perceived deficiencies in the Amended Complaint in a new action, would be the appropriate remedy under these circumstances. *See, e.g., Brown v. Matauszak*, 415 F. App'x 608, 614–16 (6th Cir. 2011) ("When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend."); *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 645 (6th Cir. 2003) (finding that a trial court abused its discretion in dismissing a complaint with prejudice, as "federal courts must be liberal in allowing

---

[8] Indeed, prior to filing this lawsuit, Alliant asked Defendants to consent to arbitration with their subsidiaries. While not required, Alliant was open and willing to pursuing its claims against all the parties in a single forum. But Defendants refused, demanding their day in court. Now that that day has come, Defendants try to hide behind the same arbitration agreements they disclaimed. This calculated maneuver should be rejected by the Court.

parties to amend their complaints"); *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) ("where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation omitted). Accordingly, while Alliant respectfully submits the Court should deny Premier's motion in full for the reasons herein, if any of Alliant's claims are dismissed, dismissal without prejudice and with leave to amend is warranted.

Respectfully submitted,

/s/ Grahmn N. Morgan
Grahmn N. Morgan
Seth T. Church
Lexie J. Elder
DINSMORE & SHOHL LLP
100 W. Main Street, Suite 900
Lexington, Kentucky 40507
Phone: (859) 425-1000
Fax: (859) 425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
lexie.elder@dinsmore.com
*Counsel for Plaintiff*

24

## CERTIFICATE OF SERVICE

       This is to certify that, on April 16, 2025, the foregoing was electronically filed with the Court's e-filing system, which will send notification to all counsel of record.


/s/ Grahmn N. Morgan
*Counsel for Plaintiff*
