# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | | |
|---|---|---|
| ALLIANT PURCHASING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-6-CHB |
| | ) | |
| OMNIA PARTNERS, LLC and | ) | |
| PREMIER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT PREMIER, INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Harrison S. Carpenter
Ryan D. Konstanzer
MCDERMOTT WILL & EMERY LLP
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
302-485-3909
Email: hcarpenter@mwe.com
Email: rkonstanzer@mwe.com

Kent Wicker
WICKER/BRAMMELL PLLC
323 West Main Street, 11th Floor
Louisville, KY 40202
502-780-6195
Email: kent@wickerbrammell.com

*Attorneys for Defendant Premier, Inc.*

Dated: April 30, 2025

## TABLE OF CONTENTS

Table of Authorities.................................................................................................... ii

Preliminary Statement ...............................................................................................1

Argument....................................................................................................................1

I.      Alliant effectively concedes that "declaratory judgment" (Count I) is not a cause of action ............................................................................................1

II.     This case should be dismissed to allow the parallel arbitration to proceed; Alliant's contention that this action involves distinct claims is disingenuous and not correct ...................................................................... 2

III.    Alliant's new theory that the R&R Policy is an implied contact between Premier, Inc. and Alliant should be disregarded .................. 4

IV.     Alliant cannot rely on conclusory allegations to support its tortious interference claim ............................................................................. 6

V.      Alliant's last-minute attempt to create fiduciary duties with extraneous documents should be rejected................................................. 7

VI.     Alliant cannon rely on conclusory allegations to support a conspiracy claim; Alliant's own argument refutes is claim ......................... 9

VII.    Alliant's sweeping statements that the OMNIA Transaction "destroyed" competition are entirely unsupported and wrong ........... 12

VIII.   Alliant's request for leave to amend is improper ........................... 13

Conclusion ........................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Britt v. Univ. of Louisville*, 628 S.W.3d 1 (Ky. 2021) ...................................5

*Dorton v. Ashland Oil & Refining Co.*, 303 Ky. 279 (Ky. App. 1946)..........4

*Insight Ky. P'rs II, LP v. Louisville/Jefferson Cty. Metro Gov't*,
    2017 WL 1193065 (W.D. Ky. Mar. 30, 2017).......................................8

*Gonzalez v. Kovacs*, 687 Fed. Appx. 466 (6th Cir. 2017) ..........................14

*Mitchco Int'l, Inc. v. Kentucky,* 2021 WL 4692839 (Ky. App. Oct. 8, 2021)
.............................................................................................................11

*Monumental Life Ins. Co. v. Nationwide Ret. Sols, Inc.*,
    242 F.Supp.2d 438 (W.D. Ky. 2003) .....................................................8

*Mortg. House of Am., LLC v. Kremer*,
    2010 WL 2540100 (Ky. App. June 25, 2010) .......................................4

*Patel v. Game*, 2017 WL 2889536 (Ky. App. July 7, 2017) .........................4

*Pulliam v. Dep't of Veteran Affairs & Veterans Hosp.*,
    2014 WL 7004484 (W.D. Ky. Dec. 10, 2014) .......................................9

*Racetech, LLC v. Ky. Downs, LLC*, 169 F.Supp.3d 709 (W.D. Ky. 2016)..12

*Sparks Milling Co. v. Powell*, 143 S.W.2d 75 (Ky. App. 1940) ...................4

*Taylor v. Streicher*, 465 Fed. Appx. 414 (6th Cir. 2012) ............................5

*Thermodrift Indus., Inc. v. Mono-Therm Insulation Sys., Inc.*,
    450 F. Supp. 398 (W.D. Ky. 1978) .....................................................11

*Univ. of Louisville v. Bohm*,
    2019 WL 1422912 (Ky. App. Mar. 29, 2019) .......................................5

**STATUTES AND REGULATIONS**

KRS 365.050 ...............................................................................................12, 13

## PRELIMINARY STATEMENT

Alliant's[1] response (Dkt. 38, Response) to Premier, Inc.'s motion to dismiss reveals the hard reality here for Alliant: it filed a complaint in search of a claim. Alliant responds to Premier, Inc.'s meritorious arguments by repeatedly citing the federal courts' "deferential" pleading standard, calling for unreasonable inferences, attempting to create "disputed facts," and pivoting from the complaint with new and unpled legal theories. But Alliant overlooks the obvious: its claims must be plausible *on their face*. Alliant's claims are not, and the complaint should be dismissed.

Setting aside the complaint's substantive deficiencies, dismissal is separately appropriate because Alliant is contemporaneously pursuing the same underlying factual allegations and legal theories in AAA arbitration against Premier LP and NHH—Alliant's actual contracting counterparties. Alliant should not be permitted to pursue this proceeding in parallel. The Court can and should dismiss the complaint on the merits. In these circumstances, the Court can also dismiss the complaint so the related arbitration can be resolved first.

## ARGUMENT

**I.    Alliant effectively concedes that "declaratory judgment" (Count I) is not a cause of action.**

Premier, Inc. explained in its Memorandum (Mem. at 12-13) that "declaratory judgment" (Count I) is a form of relief, not a separate cause of action. Alliant does not, because it cannot, dispute that in its Response. *See* Resp. at 21-22. In any event, as explained in Premier's Memorandum and

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in Premier, Inc.'s Memorandum in Support of Its Motion to Dismiss (Dkt. 24, Memorandum).

herein, Alliant is not entitled to any declaratory relief. Count I must be dismissed.

**II.    This case should be dismissed to allow the parallel arbitration to proceed; Alliant's contention that this action involves distinct claims is disingenuous and not correct.**

Premier, Inc. explained (Mem. at 22-24) that this action should be dismissed to allow the pending arbitration, which involves Alliant, Premier LP, and NHH, and the same allegations and legal theories, to proceed.[2]

Alliant's only substantive response is to say that:

> The requested declaratory relief [in this action] relates to the proper interpretation of the R&R Policy and Alliant's rights thereunder; not the underlying contracts with Defendants' subsidiaries…. Premier concedes its role and involvement in applying and interpreting the R&R Policy…. Thus, the requested declaratory relief involves a dispute between the parties in this case, does not involve the rights of absent parties, and is properly before this Court.

Resp. at 21-22; *see also id.* at 23 (arguing that the claims being asserted against Premier, Inc. and OMNIA are "distinct").[3] These statements are startling and wrong.

The core of this case is the "proper interpretation of the R&R Policy and Alliant's rights thereunder." Resp. at 21. That is the core of the pending arbitration too. In fact, despite arguing here that "the requested declaratory relief" does not relate to "the underlying contracts with" Premier

---

[2] *See* Dkt. 16 (OMNIA's memorandum in support of its motion to dismiss) at 13; Dkt. 32 (OMNIA's reply in support of its motion to dismiss) at 2, 4.
[3] Alliant argued in its response to OMNIA's motion to dismiss that its claims here are "independent, and discrete," with only "some factual overlap" with Alliant's allegations in the arbitration. Dkt. 31 at 21. Alliant also stated that it "disagrees" with OMNIA's contention that parallel related proceedings risk inconsistent judgments. *Id.*

LP and NHH, Alliant alleges in the arbitration demand that its R&R Policy-related claims arise under the NHH Agreement and the Premier LP Agreement. The risk of inconsistent rulings regarding the parties' rights and duties, if any, under the R&R Policy and the related contracts are real and serious. For the reasons stated (including Mem. at 22-24), this case should be dismissed to allow the arbitration to proceed first.[4]

Premier, Inc. requested the parties' consent to provide the Court with a copy of Alliant's arbitration demand and a redline showing the similarities between the demand and Alliant's complaint here. Alliant did not consent. Ex. A. OMNIA did not object to the Court receiving the arbitration demand "provided there are safeguards on confidentiality." Ex. B. Premier, Inc. is prepared to provide the Court with a copy of the demand at the Court's request.

Alliant's related suggestion of a stay instead of dismissal (Resp. at 22-23) is also not correct or appropriate. Alliant filed its arbitration demand contemporaneously with its original complaint in this action. No party can represent when the arbitration will conclude. A perpetual stay here is unwarranted. And Alliant's citation to the *Ohio Environmental* case (Resp. at 22-23) is inapposite. That case involved delaying enforcement of a statute and, here, Alliant is not being asked "to stand aside while a litigant in another [action] settles the rule of law that will define the rights of both." Alliant controls prosecution of the same issues and claims that it brought in separate fora.

---

[4] Alliant's suggestion that its claims here "do[] not involve the rights of absent parties" (Resp. at 22) is perplexing. Alliant's own complaint shows that its claims affect the rights of third parties Metz and Pandion.

Although Premier, Inc. believes the Court can and should dismiss Alliant's complaint on the merits, if the Court instead determines to dismiss the complaint to allow the arbitration to proceed first, a dismissal without prejudice pending the arbitration is more appropriate. *See* Mem. at 22-23.

## III. Alliant's new theory that the R&R Policy is an implied contract between Premier, Inc. and Alliant should be disregarded.

Alliant does not seriously dispute that the R&R Policy lacks the basic elements of a contract. Absent a contract, Alliant's claim for breach of contract must be dismissed. *See* Mem. at 13-14.

Presumably recognizing the complaint's deficiencies, Alliant improperly pivots to a new claim that the R&R Policy is an "implied contract." But the audible fails entirely.

As Alliant concedes (Resp. at 8-9), implied contracts arise from circumstances and conduct, not spoken words or a written document. *See Patel v. Game*, 2017 WL 2889536, at *7 (Ky. App. July 7, 2017) ("To state the obvious, an implied contract is one without a written document."); *Dorton v. Ashland Oil & Refining Co.*, 303 Ky. 279, 281 (Ky. App. 1946) (similar).[5] Here, although Premier, Inc. disputes that the R&R Policy is a contract at all, it certainly cannot be an *implied* contract because it is a written document and is incorporated into Alliant's undisputed contracts with Premier LP and NHH. *See* Compl. ¶¶20, 53; Resp. at 8.

The circumstances here are in stark contrast with the *Jones-Turner* and *Stathis* cases cited by Alliant (Resp. at 9), where there were no written

---

[5] *See also Mortg. House of Am., LLC v. Kremer*, 2010 WL 2540100, at *3 (Ky. App. June 25, 2010) ("[W]hen an express contract is made defining the circumstances under which an obligation may arise with reference to a certain subject matter such contract excludes the possibility of an implied contract concerning the same matter.") (internal quotation marks omitted); *Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 76 (Ky. App. 1940) (same).

contracts and the courts found that policies and regulations constituted implied contracts based on parties' actions and conduct.[6]

Instead, the facts alleged here align more closely with *Britt v. Univ. of Louisville*, 628 S.W.3d 1 (Ky. 2021) and *Univ. of Louisville v. Bohm*, 2019 WL 1422912 (Ky. App. Mar. 29, 2019), where the courts found that policies were, as here, incorporated into employment contracts and analyzed alleged breaches of those contracts and their incorporated policy terms. *See Britt*, 628 S.W.3d at 8; *Bohm*, 2019 WL 1422912, at *6. Alliant's new implied contract claim therefore fails as a matter of law.[7]

Alliant's Response also fails to substantively address Premier, Inc.'s meritorious argument that the complaint lacks allegations that Premier, Inc. breached the R&R Policy. Premier's only relevant obligation under Section 9.1 of the R&R Policy was to provide a "resolution," *i.e.*, its interpretation of Section 2.2.6. Premier satisfied Section 9.1, at Alliant's request. *See* Compl. ¶¶72-75. Alliant's contention that Premier's interpretation "is disputed and not a basis for dismissal" (Resp. at 10) is legally incorrect and misses the point. Alliant may not like Premier's interpretation, but Premier was not required to provide the specific interpretation that Alliant wanted. Premier's obligation was fulfilled by providing its plain

---

[6] Alliant's citation (Resp. at 9) to the *McCammish Manufacturing* case is also readily distinguishable. There, the plaintiff alleged a breach of implied contract claim separate from its breach of contract claim. Here, Alliant alleges only that "[t]he R&R Policy is [sic] valid and enforceable contract" that was breached (Compl. ¶115). Alliant cannot amend its complaint to assert a new theory of liability through its briefing. *See Taylor v. Streicher*, 465 Fed. Appx. 414, 423 n.4 (6th Cir. 2012) ("Plaintiffs cannot amend their Complaint through briefing.").

[7] Alliant's arbitration demand, if made available to the Court, would reveal the fallacy of Alliant's argument here. As stated, in the demand, Alliant contends that Premier's interpretation of the R&R Policy is a breach of the Premier LP Agreement.

5

text interpretation of the R&R Policy. *See* Mem. at 14. There is nothing more to dispute. Premier's interpretation is clear, and the Court can construe the R&R Policy as a matter of law.

## IV. Alliant cannot rely on conclusory allegations to support its tortious interference claim.

Premier, Inc. explained (Mem. at 15-17) that Alliant's tortious interference claim (Count III) should be dismissed because the complaint does not allege sufficient facts to plausibly claim that Alliant had a valid business relationship (or expectancy of one) with Metz, or that Premier, Inc. intentionally interfered with it. Alliant's Response does not change that correct result.

In the Response, Alliant argues that (i) Premier's textual reading of Section 2.2.6 of the R&R Policy "is a complete fabrication that Premier manufactured in hindsight to justify its improper interference" (Resp. at 11) and (ii) general statements that Premier, Inc.'s "actions" were "intentional, malicious, wrongful, and without justification" sufficiently allege improper motive (*id.* at 12). Neither argument persuades.

Alliant's own complaint undermines its arguments. For example, Alliant concedes that it approached Premier regarding the R&R Policy *after* "Omnia/NHH informed Alliant and Metz that it was blocking the sponsorship transfer." *See* Compl. ¶¶69-72. And there are no non-conclusory allegations to even suggest or infer that Premier's interpretation was provided in hindsight to anything or that it was coordinated with OMNIA. Indeed, Alliant's complaint and Response state the opposite: that Premier's interpretation of the R&R Policy "contradicted" OMNIA's position. *See, e.g.,* Compl. ¶107 (Premier's interpretation "directly contradict[ed] Omnia's repeated representations"); Resp. at 5 (Premier's interpretation of Section

6

2.2.6 was "unbeknownst to everyone else involved") & 6-7 (Premier's interpretation was "entirely inconsistent with Omnia's position"). Similarly, Alliant does not allege that Premier, Inc. knew about any "representations" or "assurances" that OMNIA purportedly made when Alliant signed the NHH Agreement (Dkt. 31 at 12 & 14), which are the basis for Alliant's tortious interference and breach of fiduciary duty claims against OMNIA. Accordingly, Alliant's complaint does not contain sufficient well-pleaded allegations to permit an inference that Premier, Inc. intentionally interfered with anything.[8]

## V.    Alliant's last-minute attempt to create fiduciary duties with extraneous documents should be rejected.

Premier, Inc. explained (Mem. at 17-19) that it could not conceivably have assumed any fiduciary duties to Alliant, including because Alliant's participation in the Premier Program is governed by commercial contracts with Premier LP and NHH and those contracts expressly negate an "agency" relationship. In its Response (Resp. at 14-16), Alliant attempts to circumvent this reality and conjure a fiduciary relationship with Premier, Inc. based on excerpts from two additional documents. The Court can easily, and should, reject Alliant's opposition.

To start, the two documents should be disregarded in their entirety because they are not referenced in or integral to the complaint (and Alliant

---

[8] Alliant's Response simply objects to, and does not substantively address, Premier, Inc.'s arguments (Mem. at 16-17) regarding causation and damages. Premier, Inc.'s arguments still hold. As alleged in the complaint (Compl. ¶¶75, 88), Metz made its own (intervening) business decision to walk away from Alliant even after Premier approved transferring Metz's healthcare accounts to Alliant. That fact, which is conceded by Alliant, eliminates causation and impedes attribution of damages to Premier, Inc.

does not argue otherwise). *See Insight Ky. P'rs II, LP v. Louisville/Jefferson Cty. Metro Gov't*, 2017 WL 1193065, at \*7 n.3 (W.D. Ky. Mar. 30, 2017). But even if the Court considers the documents, they do not support Alliant's argument.

Premier, Inc. is providing the Court with complete documents, at Exhibits C-D. Even a brief review shows that Alliant simply cherry-picked language it thought would be helpful, and that the documents (including the selected quotes) have nothing to do with the circumstances here.

Alliant's own Response confirms this as well. Alliant argues (Resp. at 15) that Premier is its "purchasing agent," tasked with "negotiating favorable contracts with vendors and [] purchasing goods and services at discounted rates." That relationship has no relevance here. This case has nothing to do with negotiating vendor contracts or purchasing. Alliant's claims concern Metz's request to transfer its non-healthcare accounts from Pandion to Alliant under Section 2.2.6 of the R&R Policy. Alliant also does not cite any legal basis to expand any "duties" Premier has as the Premier Program's "purchasing agent" to include another unrelated "duty" to Alliant in the context of Metz's request to transfer its purchasing accounts under the R&R Policy. And there is no basis to imply such a duty. *See Monumental Life Ins. Co. v. Nationwide Ret. Sols, Inc.*, 242 F.Supp.2d 438, 449 (W.D. Ky. 2003) ("Where a contract exists defining the scope of the principal-agent relationship, as is the case here, a limited agency relationship arises. … [T]he Court will not expand the scope of [defendant's] fiduciary duties beyond its contractual obligations.").

In any event, Section 9.1 of the R&R Policy expressly states that Premier may provide a "resolution" in the event of a dispute, and that is exactly what Premier did here. Alliant does not sufficiently explain how

that could be a breach of duty (even if a duty exists, which it does not).

Premier, Inc. also explained (Mem. at 18-19) that Alliant's theory that Premier, Inc. breached a purported duty by "conveying" sponsorship rights in the OMNIA Transaction is unsustainable under the NHH Agreement. In response, Alliant simply states that it "completely disagrees" with Premier, Inc. and that "contested facts" weigh on the issue. Alliant is wrong. Alliant's own allegations (*e.g.*, Compl. ¶41) reveal that it knowingly entered into its contractual relationship with NHH and that NHH is the "primary GPO" for the non-healthcare side of the Premier Program. The complaint is also devoid of any allegations that Premier, Inc. made any representations to Alliant when Alliant executed the NHH Agreement. The Court can and should reject Alliant's argument (Resp. at 17) that Premier, Inc. aided and abetted a breach of duty by OMNIA for the same reasons.

## VI.   Alliant cannot rely on conclusory allegations to support a conspiracy claim; Alliant's own argument refutes its claim.

Premier, Inc. explained (Mem. at 20-21) that Alliant failed to sufficiently allege a civil conspiracy claim, including because all the key facts (the OMNIA Transaction, Metz's transfer request, and NHH's decision to reject Metz's request) occurred *before* Alliant requested Premier's "resolution" of the dispute with NHH.

In the Response (Resp. at 18), Alliant argues that it pleaded a conspiracy "in great detail." But that cannot be, because Alliant cites only three conclusory recitals of the element of the claim. *Id*. The law is clear on this point: conclusory allegations of a conspiracy are not sufficient. *See Pulliam v. Dep't of Veteran Affairs & Veterans Hosp.*, 2014 WL 7004484, at *5 (W.D. Ky. Dec. 10, 2014) ("A plaintiff must plead a conspiracy with particularity,

as vague and conclusory allegations unsupported by material facts are insufficient.").[9]

In fact, one of Alliant's citations (Compl. ¶107 (cited in Resp. at 18)) completely undermines Alliant's theory. In that cited allegation, Alliant avers that "Premier's statements regarding Omnia's sponsorship rights over Metz directly *contradict Omnia's repeated representation*s …" (emphasis added). Other allegations disprove Alliant's conspiracy claim too:

- Compl. ¶78 – "Premier's statements *conflicted with statements Omnia had made* to Alliant" (emphasis added).

- *Id.* ¶79 – "Premier's position was also *inconsistent with Omnia's claim* that the R&R Policy's 'change of control' exception was not available to any non-healthcare accounts" (emphasis altered).

- *Id.* ¶80 – "*[C]ontrary to Premier's claim*, Omnia has never claimed to be Metz's Sponsor" (emphasis added).

- *Id.* ¶98 – "Premier confirmed with Alliant that, *contrary to Omnia's prior statements*, Section 2.2.6 does apply to non-healthcare entities" (emphasis altered).

Alliant also describes the absence of a conspiracy in its responses to defendants' motions to dismiss:

- Response at 5 – "Premier claimed, *apparently unbeknownst to everyone else involved*, that Omnia was Metz's non-healthcare

---

[9] Alliant argues in its Response (Resp. at 18) that it alleged that "Defendants acted in a coordinated effort to, among other things, intentionally misrepresent the R&R Policy, conceal the nature of their relationships with others in this dispute, and violate the R&R Policy and Alliant's rights thereunder." As explained throughout, Premier's interpretation of Section 2.2.6 of the R&R Policy was facially consistent with the plain language of that provision and therefore was not a "misrepresentation" or "violation" of the R&R Policy. Additionally, there are no non-conclusory allegations in the complaint that Premier "concealed" NHH's role as the "primary GPO" for the non-healthcare side of the Premier Program. Alliant knew that, was aware of the OMNIA Transaction, and knowingly signed the NHH Agreement. Compl. ¶¶40-49. And Alliant does not allege that it had any right to, or that it requested, the Channel Partnership Agreement.

Sponsor …" (emphasis altered).

- *Id.* at 6 – "Premier's statements also *directly conflicted* with Omnia's claim …" (emphasis added).

- *Id.* at 6-7 – "Omnia would point to Premier's written statements—which, again, were *entirely inconsistent* with Omnia's position" (emphasis added).

- Dkt. 31 at 9 – "Omnia would not allow the sponsorship transfer based on Omnia's interpretation that the R&R Policy did not apply to nonhealthcare accounts—*a position that even its co-conspirator Premier has rejected*" (emphasis altered).

The complaint does not allege any well-pleaded facts that Premier coordinated with OMNIA. It pleads the opposite. These circumstances do not support an inference of an "unlawful combination or agreement."

Further, Alliant's cases do not state that Kentucky uniquely permits a claim for conspiracy to breach a contract. The *Mitchco International* case, for example, involved an alleged "conspiracy to deprive [plaintiff] of the ability to fulfill" its food services contract with the U.S. Army which would "interfere with [plaintiff's] business." *Mitchco Int'l, Inc. v. Kentucky*, 2021 WL 4692839, at *5 (Ky. App. Oct. 8, 2021). *Thermodrift* is distinguishable for similar reasons. To start, the only issue before the court was whether the defendants were subject to personal jurisdiction. *Thermodrift Indus., Inc. v. Mono-Therm Insulation Sys., Inc.*, 450 F. Supp. 398, 402 (W.D. Ky. 1978). Furthermore, the *Thermodrift* court described the relevant cause of action as "conspiracy to *interfere* with the contract," "conspiracy … to breach the purchase agreements," and "conspir[acy] to *interfere* with the purchase agreement." *Id.* at 401-03 (emphasis added). There is no clear statement in the opinion that Kentucky recognizes a claim for conspiracy

11

to breach a contract.[10] There is no factual or legal basis here for a claim of conspiracy to breach the R&R Policy.

In any event, Alliant argues (Resp. at 19) that "the primary basis of [its conspiracy] claim is Defendants' tortious interference with Alliant and Metz's business relationship." But, for the reasons explained above and in the Memorandum (Mem. at 20-21), Alliant's conspiracy claim should be dismissed because the complaint does not "show [that] some breach of duty or tortious act occurred in order to sustain a claim for civil conspiracy." *Racetech, LLC v. Ky. Downs, LLC*, 169 F.Supp.3d 709, 718 (W.D. Ky. 2016).

## VII. Alliant's sweeping statements that the OMNIA Transaction "destroyed" competition are entirely unsupported and wrong.

Premier, Inc. explained (Mem. at 21-22) that KRS 365.050 is inapplicable here because no secret payment or benefit was extended by Premier, Inc. to anyone in a manner that would destroy competition within the Premier Program.

In its Response (Resp. at 20-21), Alliant argues, unpersuasively, that the OMNIA Transaction conferred "special services or privileges" to NHH "that were not offered to other purchasers in the Premier Program" and that the NHH Transaction "entirely foreclosed competition in a particular market segment" and "destroy[ed] competition for entities like Alliant" by "unilaterally relegating [] former Sponsors to a new position as an 'aggregator.'" These hyperbolic statements miss the mark.

In the OMNIA Transaction, Premier, Inc. sold the non-healthcare side of its Premier Program business to OMNIA. Alliant does not cite any au-

---

[10] Premier searched for but was unable to locate any case that expressly states that Kentucky permits standalone claims for conspiracy to breach a contract.

thority for the proposition that KRS 365.050 required Premier, Inc. to involve Alliant (or any other member of the Premier Program) in the OMNIA Transaction, and there is none. Furthermore, the OMNIA Transaction does not entirely prohibit members from transferring their purchasing accounts. Mem. at 22. It is only the case that, in the specific circumstances here, Metz could not invoke a particular provision of the R&R Policy (Section 2.2.6) to transfer its non-healthcare accounts over NHH's objection. *Id.*

Alliant's position also improperly casts aside the NHH Agreement, which Alliant buries in a footnote (Resp. at 20 n.7). As explained, Alliant knowingly signed onto the arrangement that, in Alliant's own words, established NHH as the "primary GPO" of the non-healthcare members in the Premier Program. Compl. ¶41. Alliant purports to have entered that arrangement based on representations by OMNIA, not Premier, Inc. *Id.* ¶¶43-48. That arrangement was explicitly acknowledged, including by Premier LP, as altering Alliant's former status on the non-healthcare side of the Premier Program. Ex. 2 at 18 (signature page).

The Court should reject Alliant's other argument that the OMNIA Transaction "entirely foreclosed competition" and "destroy[ed] competition for entities like Alliant." The complaint contains no non-conclusory allegations permitting an inference that the NHH Transaction "harm[ed]" or "completely destroy[ed]" Alliant's ability to compete for business. *See* Compl. ¶¶146-47. Again, it is only the case that in these specific circumstances, Metz could not invoke a particular provision of the R&R Policy and transfer its non-healthcare accounts over NHH's objection. No systemic encroachment on competition exists or is alleged.

## VIII.  Alliant's request for leave to amend is improper.

Alliant's request for leave to amend is procedurally improper and

should be rejected. *See Gonzalez v. Kovacs*, 687 Fed. Appx. 466, 470 (6th Cir. 2017) ("[A]n informal request contained in a brief in opposition to a motion to dismiss is not deemed a Rule 15 motion to amend. … [T]he district court had no obligation to either grant [plaintiff's] informal request to amend or explain why it took no action on this issue."). Alliant should have sought to amend after defendants' opening briefs were filed. Alliant does not have a general right to amend, and its decision not to seek leave sooner wastes judicial and party resources.

## CONCLUSION

For the reasons explained above and in the Memorandum, Premier, Inc. respectfully requests that the Court grant its motion to dismiss.

Respectfully submitted,

/s/ *Kent Wicker*
Kent Wicker
WICKER/BRAMMELL PLLC
323 West Main Street, 11th Floor
Louisville, KY 40202
502-780-6185
Email: kent@wickerbrammell.com

Harrison S. Carpenter
Ryan D. Konstanzer
MCDERMOTT WILL & EMERY LLP
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
302-485-3909
Email: hcarpenter@mwe.com
Email: rkonstanzer@mwe.com

*Attorneys for Defendant Premier, Inc.*

Dated: April 30, 2025

14

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing document has been filed on the Court's electronic filing system this 30th day of April, 2025, which will provide service to all parties.

*/s/ Kent Wicker*
Kent Wicker