| | | |
|---|---|---|
| ALLIANT PURCHASING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:25-CV-00006-CHB |
| | ) | |
| OMNIA PARTNERS, LLC and | ) | |
| PREMIER, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF OMNIA PARTNERS, LLC'S MOTION TO DISMISS AMENDED VERIFIED COMPLAINT

Defendant Omnia Partners, LLC ("Omnia") respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss the claims in Alliant Purchasing, LLC's ("Alliant" or "Plaintiff") Amended Verified Complaint (Dkt. No. 6, "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff alleges that Defendant Premier, Inc. operates a national group purchasing program ("GPO") through its subsidiaries, including Premier Healthcare Alliance, LP ("Premier LP"), that allows its members to purchase goods and services under contracts that Premier negotiates with suppliers (the "Premier Program"). Non-party, Non-Healthcare Holdings, LLC ("NHH") is a group purchasing organization for the purchase of non-healthcare goods and services. NHH's B&I Channel Partnership Agreement ("CP Agreement") with non-party Premier LP allows non-healthcare organizations to access the Premier Program exclusively through NHH. Defendant Omnia is the sole member of NHH.

Plaintiff Alliant is a group purchasing organization whose members include organizations that purchase both healthcare and non-healthcare goods and services. Pursuant to the GPO Participation Agreement between Alliant and NHH ("the NHH Agreement"),[1] Alliant's non-healthcare members can only access the Premier Program through NHH. Non-party Pandion Optimization Alliance ("Pandion") is a group purchasing organization whose non-healthcare members also participate in the Premier Program through NHH. ██████████████ ████████████████████████████████████████████ ██████████████████

Despite dressing up a purported breach of contract claim into various supposed torts, the crux of the Alliant's complaint is that Defendants allegedly breached a purported agreement with Alliant by not permitting a non-party, Metz Culinary Management, LLC ("Metz"), to transfer its non-healthcare accounts from Pandion to Alliant. Alliant has contractually agreed that for non-healthcare accounts, Alliant's sole access to the Premier Program is through NHH and the NHH Agreement, which incorporates Premier LP's Recruitment and Retention Policy ("R&R Policy") that Alliant alleges was violated by Defendants when Premier LP determined that Metz's requested transfer of its non-healthcare accounts to Alliant was not permitted under the R&R Policy. **The**

---

[1] The NHH Agreement is attached hereto as Exhibit 1. The Complaint repeatedly references and relies upon the NHH Agreement and is central to Alliant's claims. (*See* Am. Compl. (Dkt. No. 6) at ¶¶ 46–53, 78, 108.) As the Complaint establishes, the NHH Agreement "explicitly incorporates the [Premier LP's Recruitment and Retention Policy (the "R&R Policy")] and states the parties shall comply with its terms." (*Id.* at ¶ 53.) Alliant attached the R&R Policy—which is not a signed, standalone agreement—to the Complaint but failed to attach the NHH Agreement. Under Sixth Circuit precedent, Omnia can attach the NHH Agreement without converting this Motion to a motion for summary judgment. *See Campbell v. Nationstar Mortg.*, 611 Fed. App'x 288, 292 (6th Cir. 2015); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014); *Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *2 (6th Cir. Apr. 5, 2023); *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. App'x 319, 322–23 (6th Cir. 2002). Further, the Court may consider the terms and is not bound to accept "facts" that are clearly erroneous based on the terms of the NHH Agreement. *Williams v. CitiMortgage, Inc.*, 498 Fed. App'x 532, 534–536 (6th Cir. 2012).

**fatal flaw with Alliant's entire Complaint is that Defendant Omnia is not a party to the NHH Agreement or any other agreement with Alliant.**

Despite the express terms of the NHH Agreement, which clearly demonstrate that Defendant Omnia is not a party, Alliant alleges that the R&R Policy is somehow a standalone contract with Omnia or somehow imposes a duty on Omnia. Alliant's allegation is contrary to the NHH Agreement, which expressly incorporates Premier's R&R Policy and requires Alliant and non-party NHH to comply with the R&R Policy—not Omnia. Alliant does not allege any facts that could plausibly make the R&R Policy a standalone contract between Omnia and Alliant, nor does Alliant attach or plead a signed agreement between Alliant and Omnia.

Because Alliant's only access to the Premier Program for non-healthcare accounts is through NHH and the NHH Agreement, Alliant's sole recourse, if any, for any alleged failure to follow Premier LP's R&R Policy is dictated by the NHH Agreement ████████████ ████████ On January 3, 2025, the same day that Alliant filed its original Complaint (Dkt. No. 1), it initiated an arbitration against non-parties NHH and Premier LP, the only parties to the NHH Agreement with Alliant, seeking the same relief sought in this litigation based on the same core facts alleged here—the transfer of Metz's non-healthcare accounts to Alliant.[2] ████████ ████████████████████████████████████████ ██████████████████████████████[3] This lawsuit appears to be an impermissible and blatant end-run around the NHH Agreement in which Alliant seeks to escape

---

[2]     Ex. 2, AAA Arbitration Initiation Letter. The Court may take judicial notice of the fact that Alliant brought arbitration proceedings against NHH and Premier LP as a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201(b)(2)) based upon the AAA's initiation letter.
[3]     Ex. 1, NHH Agreement ████████████████ ███████████

the NHH Agreement by suing NHH's parent, Omnia.  If Alliant has a claim, which is denied, it is against the parties to the arbitration—not Omnia—and this dispute should be resolved through arbitration.

Even if the Court were to determine that Omnia is a proper party, which is denied, as discussed further below, Plaintiff's Complaint must be dismissed for failure to state a claim.  First, Alliant's claim for declaratory judgment (Count I) must be dismissed because Omnia is not a proper party, Alliant lacks standing to assert the rights of non-party Metz, and this civil action risks inconsistent rulings with the ████████ arbitration Alliant has filed.  Second, Alliant's claim for breach of contract (Count II) must be dismissed because there is no contract between Alliant and Omnia, Alliant does not have standing to assert violations of Metz's purported contractual rights, and Premier LP—not Omnia—was responsible for deciding whether its R&R Policy permitted Metz's transfer request. Third, Alliant's tortious interference claim (Count III) must be dismissed because Alliant cannot allege facts meeting the required element of improper motive.  Fourth, Alliant fails to state claims for breach of fiduciary duties (Count IV) and aiding and abetting the breach of fiduciary duties (Count V) because the Complaint does not and cannot plausibly allege the existence of a fiduciary relationship between Alliant and Defendants.  Fifth, Alliant's claim for civil conspiracy (Count VI) must be dismissed because it is based on a contract claim and is not premised on a viable tort claim.  Finally, Alliant's claim for unfair trade practices (Count VII) must be dismissed as it fails to allege plausible facts that state a claim under Kentucky Revised Statute § 365.050.

<u>**STATEMENT OF FACTS**</u>

**The Premier Program**

This litigation involves contractual disputes arising from Alliant's participation in a group purchasing program (a "GPO") operated by Defendant Premier. Inc.'s subsidiary, Premier LP (collectively, both Premier entities will be referred to as "Premier"). (Am. Compl. (Dkt. No. 6) ¶¶ 8–12.)[4] Premier's GPO program is called the Premier Program. (*Id.* at ¶ 8.) A GPO helps its members purchase goods and services at a lower cost and/or with better terms by combining the purchasing power of its members when negotiating contracts with suppliers/vendors from which the GPO members may purchase goods and services. (*Id.*) Until approximately May of 2023, Premier served both healthcare and non-healthcare organizations that were members of the Premier Program. (*Id.* at ¶ 10, 37.) Alliant recruits and aggregates purchasers of healthcare and non-healthcare products and services ("members") that then purchase products and services through the Premier Program. (*Id.* at ¶¶ 12, 14–19.) Aggregators like Alliant often are referred to colloquially as "sponsors." (*See id.* at ¶¶ 14-16.) Alliant is paid a portion of the administrative fees the vendors pay back to the GPO based on purchases by their sponsored members. (*Id.* at ¶ 16.)

Beginning in 2015, Alliant's access to the Premier Program was governed by a single GPO participation agreement with Premier LP (the "Premier LP Agreement"). (*Id.* at ¶ 12.) The Premier LP Agreement covered healthcare and non-healthcare purchasing through the Premier Program. (*Id.* at ¶¶ 12, 14–15.) Currently, Alliant still aggregates healthcare-related accounts in

---

[4]     The allegations set forth herein from the Complaint are accepted as true solely for purposes of Omnia's Motion to Dismiss and are not an admission as to the truth or accuracy of Alliant's allegations. Omnia reserves all defenses.

the Premier Program under the Premier LP Agreement.  (Am. Compl. (Dkt. No. 6) at ¶¶ 12–15, 19.)

Alliant's membership in the Premier Program is subject to Premier LP's R&R Policy, which governs the activities of its members.  (*Id.* at ¶ 20.)  Alliant attached the R&R Policy as Exhibit 1 to the Complaint. The R&R Policy provides that members can change their sponsor in certain circumstances.  (*Id.* at ¶ 27.)  As relevant to the allegations here, if a change of control results in a transfer of control of a sponsor to another Premier member, the sponsored affiliates of the sponsor undergoing the change of control have the right to transfer to another sponsor within six months following the change of control without such transfer being deemed a violation of the R&R Policy in and of itself.  (Ex. 1 to Am. Compl. (Dkt. No. 6-1) R&R Policy, § 2.2.6.)  A "change of control" occurs when "…all or substantially all of the assets of[] the sponsor are sold, transferred, or assigned to an unrelated third party…" (*Id.*)

### The NHH Transaction

As part of an internal reorganization, in or around May of 2023, Premier created a new subsidiary, NHH, and Premier transferred all of its non-healthcare accounts and agreements to NHH.  (Am. Compl. (Dkt. No. 6) at ¶¶ 37-39.)  In connection with the reorganization, Premier and NHH entered into the CP Agreement.[5]  (*Id.* at ¶ 40.)  The CP Agreement allows non-healthcare members to maintain access to the Premier Program through NHH. In July of 2023, Premier sold NHH to Omnia (the "NHH Transaction").  (*Id.* at ¶¶ 36–39.)  In connection with Omnia's purchase

---

[5]    The CP Agreement as amended is attached hereto as Exhibit 3.  Because the CP Agreement is referred to in the Complaint and is central to Alliant's claims, Omnia can attach the CP Agreement without converting this Motion to a motion for summary judgment.  *Campbell*, 611 Fed. App'x at 292; *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 466; *Clark*, 2023 WL 2787325, at *2; *Thomas*, 29 Fed. App'x at 322–23. Further, the Court may consider the terms and is not bound to accept "facts" that are clearly erroneous based on the terms of the CP Agreement.  *Williams*, 498 Fed. App'x at 534–536.

of NHH, Premier and NHH amended and restated the CP Agreement

(*Id.* at ¶ 40; Ex. 3, CP Agreement ▮.) Omnia is a limited signatory only with respect

to ▮▮▮▮ (Ex. 3, CP Agreement ▮)▮▮▮▮

(*Id.* ▮) Omnia is not otherwise bound

by the CP Agreement, including the R&R Policy, and has no right to roster (as defined below)

Premier members or provide access to the Premier Program. ▮▮▮▮

(*See id.*)

**The NHH Agreement**

After the NHH Transaction, Alliant entered into the NHH Agreement, a GPO participation

agreement with NHH, which governs Alliant's non-healthcare members' participation in the

Premier Program. ((Am. Compl. (Dkt. No. 6) ¶¶ 45-46.) Omnia is not a party to the NHH

Agreement. (*See* Ex. 1, NHH Agreement, pp. 1, 16–18.)

(*See* Ex. 1, NHH Agreement ▮) Contrary to Alliant's allegations that the CP

Agreement between Premier and NHH was a "secret" (Am. Compl. (Dkt. No. 6-1) ¶ 74), t▮

(Ex. 1, NHH Agreement▮

)▮▮▮▮

(*Id.*) The NHH Agreement

explicitly states that, ██████████████████████████████████████████████████████

████████████████████████ (*Id.* ███████) The NHH Agreement incorporates the R&R Policy, and NHH and Alliant "agree that they shall each comply with the terms of the Recruitment and Retention Policy." (Am. Compl. (Dkt. No. 6) at ¶ 53; Ex. 1, NHH Agreement █████) Before and after the NHH Transaction, Premier continued to manage and administer the R&R Policy. (Am. Compl. (Dkt. No. 6) at ¶¶ 44, 72.)

### Metz's Requested Transfer of Non-Healthcare Accounts

Metz is a member of the Premier Program. (Am. Compl. (Dkt. No. 6) at ¶ 54.) Metz has both healthcare and non-healthcare accounts and was initially sponsored in the Premier Program by Vantage Purchasing Partners LLC ("Vantage"). (*Id.* at ¶¶ 55–56.) Alliant alleges that Vantage's December 2023 acquisition by another Premier Program sponsor, Pandion, was a change of control that allowed Metz to select a new sponsor and caused Metz to issue a Request for Proposal seeking a new sponsor for its healthcare and non-healthcare accounts. (*Id.* at ¶¶ 58-61.) Alliant alleges that Metz ultimately selected Alliant and submitted a Premier sponsorship transfer request form to Premier requesting Alliant as its new sponsor for its healthcare and non-healthcare accounts. (*Id.* at ¶¶ 64, 66.)

Pandion, however, disputed the proposed Metz transfer of its accounts to Alliant. In accordance with Section 9.1 of the R&R Policy, Premier, as the ultimate arbiter of the R&R Policy, determined that Metz could not transfer its non-healthcare accounts to Alliant but could transfer its healthcare accounts to Alliant. (*Id.* at ¶ 75.) Premier informed Metz and Alliant of its determination. (*Id.*) Metz decided not to transfer its healthcare accounts to Alliant because it wanted a single manager for all of its accounts. (*Id.* at ¶ 104.)

**Alliant Initiates Arbitration and Litigation Proceedings**

On January 3, 2025, Alliant filed this litigation against Omnia and Premier, Inc. (Compl. (Dkt. No. 1)) and an arbitration against NHH and Premier LP (Ex. 2, AAA Notice of Filing) based on the same core factual allegations at issue in this lawsuit and seeking the same damages. ███ ██████████████████████████████████████████ (Ex. 1, NHH Agreement, ███ )

## LEGAL STANDARDS

A complaint is subject to dismissal if the claims within it are not adequately pled. Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a)(2) requires a claimant to include in their pleading "a short and plain statement of the claim showing that the pleader is entitled to relief." In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the court "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

"Pleadings that merely offer 'labels and conclusions or a formulaic recitation of the elements of a cause of action,' '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' or 'naked assertions devoid of further factual enhancement' will not suffice." *Jocke v. City of Medina, Ohio*, No. 22-3954, 2023 WL 5167326, at *4 (6th Cir. Aug. 11, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This is because "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 1965) (emphasis in original). Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is also appropriate if the complaint lacks an allegation regarding a required element necessary to obtain relief. *League*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 1969); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

"In ruling on a Rule 12(b)(6) motion, a court may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Williams*, 498 Fed. App'x at 534 (quotations and citations omitted). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Id.* at 536. "A court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* "Indeed, if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document, not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

**<u>ARGUMENT</u>**

I. **Alliant's claims against Omnia fail because Omnia is not a proper party to this action.**

Alliant's non-healthcare accounts access the Premier Program solely through NHH, and the NHH Agreement governs Alliant's non-healthcare members' participation in the Premier Program. (Ex. 1, NHH Agreement ▆▆▆▆▆) Further, the NHH Agreement obligates Alliant and NHH to comply with Premier's R&R Policy. (*Id.* ▆▆▆▆) The NHH Agreement requires

10

███████████████████████████████████████████████████████████████████████

███████████████████████████████ (*Id.* ████████) The crux of all of Alliant's claims against

Omnia is Alliant's allegation that Omnia allegedly breached a purported agreement with Alliant

by not allowing Metz to transfer its non-healthcare accounts from Pandion to Alliant. Very clearly

if Alliant has any claims related to the Metz transfer, they arise solely under the NHH Agreement—

and Omnia is not a party to the NHH Agreement.

In what appears to be a blatant attempt to skirt the fact that Omnia is not a party to the NHH

Agreement, Alliant erroneously alleges that, "upon information and belief," Omnia entered into

the CP Agreement with Premier, Inc. and attempts to peg obligations on Omnia by making the

unsupported and erroneous conclusion that Omnia "as the owner of NHH" became the "'primary

GPO,'" acted as an agent for Alliant, and a litany of other conclusory, but incorrect, allegations.

(Am. Compl. (Dkt. No. 6) at ¶¶ 40-42.)  As the CP Agreement shows, however, ████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ (Ex. 3, CP Agreement ████

███).

Moreover, Alliant erroneously alleges that the R&R Policy is a standalone contract.  Yet,

the NHH Agreement belies this allegation.  Alliant is bound by the R&R Policy as to its non-

healthcare members because ████████████ the NHH Agreement (to which Omnia is not a party)

obligates Alliant to comply with Premier's R&R Policy.  (Ex. 1, NHH Agreement.)

Finally, Omnia's status as NHH's parent company does not render it liable for NHH's

contractual obligations.  "It is a general principle of corporate law deeply 'ingrained in our

economic and legal systems' that a parent corporation (so-called because of control through

ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United*

*States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) ("A parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned."). No agreement exists between Omnia and Alliant, and Alliant has not—and cannot—plausibly plead that Omnia owes any duties or obligations to Alliant. For these reasons, all of Alliant's claims against Omnia must be dismissed.

**II. Alliant's claim for declaratory judgment (Count I) must be dismissed because Omnia is not a proper party, and Alliant improperly seeks the declaration of non-party rights.**

The Declaratory Judgment Act requires the existence of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Galluzzo v. Champaign County Court of Common Pleas*, 168 Fed. App'x 21, 24 (6th Cir. 2006) (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)). Courts in the Sixth Circuit analyze the following factors to determine whether declaratory relief is appropriate:

1) Whether the declaratory action would settle the controversy;
2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;
3) Whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;'
4) Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and
5) Whether there is an alternative remedy that is better or more effective.

*AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 681 F. Supp. 3d 842, 857–58 (W.D. Tenn. 2023) (quoting *Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012)).

For the reasons set forth in Section I, Omnia is not a proper party. Omnia is not obligated to Alliant in any respect since it has no contract with Alliant. Simply put, there are no rights of

Alliant that can be declared vis-à-vis Omnia. Omnia is not a party to the NHH Agreement, and as a limited signatory to the CP Agreement, Omnia has no legal rights with respect to rostering, providing, or denying access to the Premier Program, or enforcing Premier's R&R Policy under the CP Agreement. Accordingly, even if the Court granted Alliant's request for declaratory relief, Omnia does not have the right to effectuate the declaratory relief. For these reasons alone, the Court must dismiss Count I as to Omnia.

Further, Alliant's claim for declaratory judgment fails as a matter of law because it seeks a declaration of the contractual rights of a third party—Metz—who is not a party to this litigation. Ordinarily, a party does not have standing to assert the rights of third parties and cannot rest its claim to relief on the legal rights or interests of third parties. *In re Troutman Enterp., Inc. (Harker v. Troutman)*, 286 F.3d 359, 364 (6th Cir. 2002). Here, Alliant seeks a declaration that "***Metz*** was entitled to, and/or did, transfer its healthcare and non-healthcare accounts to Alliant … and requiring Premier and/or Omnia to permit and/or recognize that transfer." (Am. Compl. (Dkt. No. 6) ¶ 113) (emphasis added).) On its face, the Complaint seeks a declaration as to non-party ***Metz's*** rights under the Premier Program and R&R Policy. Accordingly, Alliant lacks standing to assert the rights of Metz to the potential detriment of Pandion.

Finally, a declaratory judgment runs the risk of inconsistent rulings since other than Alliant the actual parties to the NHH Agreement are not and cannot be parties to this lawsuit. Asking the Court for a declaratory judgment necessarily impacts NHH's rights under the NHH Agreement. Alliant has filed a ▮▮▮▮▮▮▮ arbitration against NHH and Premier LP, and that proceeding is a better and more effective alternative to resolve the dispute regarding Metz's non-healthcare accounts.

13

Accordingly, the Court should dismiss Count I because Omnia is not a proper party, Alliant does not have standing to assert non-party Metz's interests and non-party NHH's interests would be adversely affected.

### III. Alliant's breach of contract claim (Count II) must be dismissed because Alliant has not and cannot allege that Omnia is a party to any contract with Alliant.

To bring a breach of contract claim under Kentucky law, a plaintiff must plead facts showing: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach. *Metro Louisville/Jefferson Cnty. Gov. v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citation omitted); *see also Ebonite Int'l, Inc. v. Hickland*, 2018 WL 2107779, at *7 (W.D. Ky. May 7, 2018).

Here, Alliant's claim relies exclusively on the R&R Policy as the alleged contract, stating: "[t]he R&R Policy is [sic] valid and enforceable contract." (Am. Compl. (Dkt. No. 6) ¶ 115.) However, the R&R Policy is not an independent contract; rather, it is incorporated into, and binding only on NHH and Alliant via the NHH Agreement. (*Id.* at ¶ 53.) Critically, Omnia is not a party to the NHH Agreement. Instead, Alliant misleadingly conflates Omnia and its subsidiary, NHH, by repeatedly referring to "Omnia/NHH" throughout the Complaint as if they are a single entity. (*See id.* at ¶¶ 44–46, 69–71, 81, 87–91, 94–95.) Omnia's status as NHH's parent company, however, does not render it liable for NHH's contractual obligations. *See Bestfoods*, 524 U.S. at 61.

Further, even if the R&R Policy was a standalone contract and somehow bound or applied to Omnia, which is denied, Alliant alleges that Premier was responsible for determining whether the transfer of Metz's non-healthcare accounts was permitted under Premier's R&R Policy. Section 9.1 of the R&R Policy allows Premier to decide any controversy or dispute under the R&R Policy. (Ex. 1 to Am. Compl. (Dkt. No. 6-1) R&R Policy, § 9.1.) As Alliant alleges, after Premier

transferred its non-healthcare accounts to NHH, Alliant was informed that "Premier's R&R Policy would remain in effect and that *Premier would continue to manage the R&R Policy*" (Am. Compl. (Dkt. No. 6) ¶ 44 (emphasis added)). Furthermore, the Complaint alleges that in order to request that its accounts be transferred to Alliant, "Metz submitted a *Premier* sponsorship transfer request form *to Premier*" and when Alliant and Metz learned that the R&R Policy did not allow the transfer, "Alliant contacted *Premier, which retained the ability to administer the R&R Policy.*" (*Id.* at ¶¶ 66, 70–72 (emphasis added)). The Complaint alleges that, ultimately, *Premier* determined that, under the R&R Policy, Metz could not transfer its non-healthcare accounts to Alliant. (*Id.* at ¶ 75.)

Because Alliant has not and cannot plausibly allege the existence of any contract between Alliant and Omnia; Alliant does not have standing to assert violations of Metz's purported contractual rights; and Alliant's own allegations show that Premier—not Omnia—was responsible for deciding if Metz's transfer request was proper under the R&R Policy, Alliant has failed to state a claim upon which relief can be granted against Omnia.

## IV. Alliant's tortious interference claim (Count III) fails as a matter of law because Alliant cannot meet the improper motive element.

Alliant alleges that Defendants "wrongfully, maliciously, and/or intentionally interfered in Alliant and Metz's valid business relationship." (Am. Compl. (Dkt. No. 6) ¶ 121.) To bring a claim for tortious interference with business relations, a plaintiff must plead facts showing: (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages. *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. App. 2014) (citation omitted); *see also*

*ClubSpecialists Int'l, LLC v. Keeneland Ass'n, Inc.,* 2018 WL 2050134, at *7 (E.D. Ky. May 2, 2018).

Moreover, courts have consistently noted that these cases "have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it[.]" *In re Hill*, 957 F.3d 704, 714 (6th Cir. 2020) (quoting *Nat'l Collegiate Athletic Ass'n By & Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 858 (Ky. 1988)); *see also Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. Ct. App. 2012) (noting that "[t]his analysis turns primarily on motive."). Kentucky "law is clear that a party may not recover … in the absence of proof that the opposing party 'improperly' interfered with his prospective contractual relation." *NCAA*, 754 S.W.2d at 858. This requires a party to "show malice or some significantly wrongful conduct." *Id.* at 859.

"The key question is whether the defendant has a valid reason for taking the challenged action." *In re Hill*, 957 F.3d 704, 714 (6th Cir. 2020) (citation omitted). The party whose interference is alleged to have been improper may escape liability by showing that he acted in good faith to assert a legally protected interest of his own." *NCAA*, 754 S.W.2d at 858. This includes protecting and asserting one's bargained for and essential contractual rights. *Id.* at 860.

As discussed previously, Omnia has no contractual right to grant or deny Metz's transfer request and therefore the claim must be dismissed. Further, even assuming that Omnia had the contractual right to block the Metz transfer, which is denied, Alliant's claim for tortious interference against Omnia fails because Alliant cannot plead the requisite element of improper motive. First, Alliant alleges that Premier—not Omnia—ultimately determined that Metz's transfer request was not proper under the R&R Policy. (Am. Compl. (Dkt. No. 6) ¶¶ 75, 100.) The Complaint also alleges that "Omnia/NHH asserted that Metz's requested transfer was

16

improper because the R&R Policy did not allow non-healthcare Member Facilities to select a new Sponsor following their former Sponsor's change of control." (Am. Compl. (Dkt. No. 6) ¶ 70.)[6] By Alliant's own admission, the basis for "Omnia/NHH" allegedly blocking the transfer was to enforce NHH's rights and obligations under the NHH Agreement and the R&R Policy. It is well established that if a party asserts a legally protected interest in good faith, even if its interpretation of that interest is mistaken, it cannot be held liable for tortious interference. *See NCAA*, 754 S.W.2d at 860 ("If the NCAA believed that employment of [the defendant] was contrary to its interest, even if such belief was mistaken, it was justified in disapproving [the defendant] pursuant to the terms of the agreement with WTBS."); *see also Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003). Enforcing the R&R Policy, which is binding on Alliant through the NHH Agreement, is not an "improper motive" as a matter of law. Accordingly, the tortious interference claim against Omnia must be dismissed.

**V.     Alliant fails to state claims for breach of fiduciary duties (Count IV) and aiding and abetting the breach of fiduciary duties (Count V) because the Complaint does not and cannot allege the existence of a fiduciary relationship between the parties.**

Under Kentucky law, the first and most essential element of claims of breach of fiduciary duty and aiding and abetting a breach of fiduciary duty is the existence of a fiduciary relationship. *ClubSpecialists Int'l*, 2018 WL 2050134, at *6.[7] A fiduciary relationship is defined as "one founded on trust or confidence reposed by one person in the integrity and fidelity of another" that

---

[6]     Pursuant to ▮▮▮▮▮▮ the CP Agreement, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (Ex. 3, CP Agreement.)

[7]     "Under Kentucky law, a breach of fiduciary duty occurs when (1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach. … A party is liable for aiding and abetting a breach of fiduciary duty if the following elements are proven: (1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party substantial assistance or encouragement in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty." (internal citations and quotations omitted)).

requires "one person to act primarily for another's benefit in matters connected with such undertaking." *Steelvest, Inc. v. Scansteel Center, Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). Kentucky courts have held that "[a] fiduciary duty is the highest order of duty imposed by law. It is not to be lightly required." *Snow Pallet*, 367 S.W.3d at 5 (citations omitted). The creation of a fiduciary duty cannot arise without both parties expressly agreeing that one party will act in the primary interest of the other. *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 705 (E.D. Ky. 2012); s*ee also Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 552 (Ky. 2009) (holding that a fiduciary must have "expressly undertaken to act for the plaintiff's primary benefit.").

Alliant does not even attempt to plead the existence of a fiduciary relationship beyond stating, in conclusory terms, that "a special relationship existed between Alliant and Defendants, whereby, among other things, Omnia and Premier served as Alliant's agents." (Am. Compl. (Dkt. No. 6) ¶ 125.) The Court should not accept these barebones, unwarranted factual inferences and legal conclusions as true. *Directv*, 487 F.3d at 476. The Complaint cannot plausibly allege that Defendants entered into an agreement with Alliant whereby Defendants agreed to act as Alliant's agent. Even if the R&R Policy was a contract between Omnia and Alliant, which it clearly is not, the mere fact that a defendant is in a contractual relationship with a plaintiff is not sufficient to establish a fiduciary relationship as it is well established that an "arms-length commercial transaction, where each party is assumed to be protecting its own interest" does not create a fiduciary relationship. *Snow Pallet,* 367 S.W.3d at 5. The same is true for any purported agreements between Defendant Premier Inc. and Alliant. Accordingly, Alliant has failed to plead sufficient facts establishing the existence of a fiduciary relationship between the parties. Because Alliant has failed to plausibly allege the existence of a fiduciary relationship between Defendants and Alliant, Alliant's claims in Count IX and Count X must be dismissed.

**VI.** **Alliant's claim for civil conspiracy (Count VI) must be dismissed because it is based on a contract claim and is not premised on a viable tort claim.**

To bring a civil conspiracy claim under Kentucky law, a plaintiff must plead facts showing: "1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Ellington v. Fed. Home Loan Mortg. Corp.*, 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014) (citation omitted). Further, "the law in Kentucky requires the actual commission of the tortious act or a concert of action where substantial assistance has been provided in order for liability to attach based on a civil conspiracy theory." *James v. Wilson*, 95 S.W.3d 875, 897-98 (Ky. Ct. App. 2002). Under Kentucky law, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Reed v. Gulf Coast Enters.*, 2016 WL 79998, at *10 (W.D. Ky. Jan. 6, 2016) (quoting *Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 Fed. App'x 451, 458-59 (6th Cir. 2013)).

As an initial matter, a breach of contract claim cannot form the basis of a civil conspiracy claim. Civil conspiracy requires an underlying unlawful act or tort, and a breach of contract does not qualify as such an act. *See Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 811 (W.D. Ky. 2014), aff'd, 597 Fed. App'x 858 (6th Cir. 2015) (stating "[t]o support a civil conspiracy claim, some underlying tortious act must be taken."). Alliant's conspiracy claim is simply a recast of its breach of contract claim: Alliant alleges that Defendants breached their purported contractual obligations by determining under the R&R Policy that Metz could not transfer its non-healthcare accounts from Pandion to Alliant. (Am. Compl. (Dkt. 6) ¶¶ 116, 137, 139.) Accordingly, this claim must be dismissed.

Even if Alliant's civil conspiracy claim were not based on the alleged breach of contract, it cannot stand without an underlying tort claim. *Ellington*, 13 F. Supp. 3d at 730. In *CNH Capital*

*Am. LLC v. Hunt Tractor, Inc.*, the plaintiff asserted claims for fraudulent conveyance and civil conspiracy to commit a fraudulent conveyance. 568 Fed. App'x 461, 462 (6th Cir. 2014). After dismissing the plaintiff's fraudulent conveyance claim on securities law grounds, the court examined the civil conspiracy claim and found that the defendant could not be liable for conspiring to perform a tort it could not commit as a matter of law. *Id.* at 472–73. The court dismissed the civil conspiracy claim and held that, without a tort claim to be based upon, the civil conspiracy claim could not survive as a matter of law. *Id.*

Assuming *arguendo* that Alliant's civil conspiracy claim is not simply a recasting of its breach of contract claim, which is denied, the civil conspiracy claim fails because Alliant's tort claims must be dismissed for the reasons set forth in this memorandum. Without a valid underlying tort to stand on, there is no actionable conspiracy claim as Omnia cannot be held liable for conspiring to perform a tort that it cannot commit as a matter of law. *See CNH Capital Am. LLC*, 568 Fed. App'x at 472–73. Accordingly, Alliant's claim for civil conspiracy cannot survive and must be dismissed.

**VII. Alliant's claim for unfair trade practices (Count VII) must be dismissed as it fails to allege any facts that can show a violation of KRS § 365.050.**

Alliant's final claim alleges a violation of Kentucky Revised Statute ("KRS") § 365.050. Under KRS § 365.050, an unfair trade practice is defined as:

> The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment or allowance tends to destroy competition, is an unfair trade practice, and no person shall resort to such trade practice.

The totality of Alliant's allegations regarding Omnia's supposed unfair trade practices is as follows:

> Premier and Omnia have acted with the unlawful intention to destroy competition, or prevent competition with Omnia and/or Pandion, by secretly providing special services or privileges to Omnia and/or Pandion, and failing to provide these same services or privileges to other Sponsors in the Premier Program upon like terms and conditions. Such benefits tend to destroy competition and constitute an unfair trade practice under KRS 365.050.

(Am. Compl. (Dkt. No. 6) at ¶¶146–47.)

Alliant's Complaint fails to allege any facts—let alone sufficient facts—that would plausibly show a violation of KRS 365.050 or otherwise feasibly illustrate that Omnia engaged in the proscribed conduct. Indeed, Alliant's scant allegations are the classic "formulaic recitation of the elements" that will not withstand a motion to dismiss under *Twombly* and *Iqbal*. *See Twombly,* 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given that the Complaint lacks plausible factual allegations that Omnia's violated KRS 365.050, Alliant's claim for unfair trade practices fails as a matter of law and must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant Omnia respectfully requests that this Court dismiss Alliant's Complaint in its entirety, with prejudice.

**DATED**: 5 March 2025

Respectfully submitted,

FROST BROWN TODD LLP

*/s/ Jeremiah A. Byrne*
Jeremiah A. Byrne
William B. Decker, III
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
(502) 581-1087 – Fax
jbyrne@fbtlaw.com
wdecker@fbtlaw.com

*Counsel for Defendant Omnia Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and that a true and correct copy of the foregoing was served this 5th day of March 2025, by electronic mail to the following:

Grahmn N. Morgan
Seth T. Church
Lexie J. Elder
Dinsmore & Shohl LLP
100 W. Main St., Suite 900
Lexington, KY  40507
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
lexie.elder@dinsmore.com
*Counsel for Plaintiff*

Kent Wicker
Katherine E. Tapp
Wicker Brammell PLLC
323 W. Main St.
11th Floor
Louisville, KY  40202
kent@wickerbrammell.com
katherine@wickerbrammell.com
*Counsel for Defendant, Premier, Inc.*

*/s/ Jeremiah A. Byrne*
*Counsel for Defendant Omnia Partners*